**Deanna Daughhetee VINSON,**
**Appellant,**

v.

**Ray VINSON, Jr., Respondent.**

**No. ED 88702.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 13, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2007.

Application for Transfer Denied
Feb. 19, 2008.

lution of marriage on August 6, 1996."

Allan H. Zerman, Michael A. Gross, Joseph F. Yeckel, James P. Carmody, St. Louis, MO, for Appellant.

Edward L. Dowd, James F. Bennett, Megan S. Heinz, K. Lee Marshall, Louis, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Deanna Daughhetee Vinson ("Wife") appeals the trial court's judgment dissolving her marriage to Ray Vinson, Jr. ("Husband"). Finding no error, we affirm.

## I. BACKGROUND

This dissolution matter, which had no child custody or support issues and no request for maintenance by either party, consumed eleven days of hearings and over 2,700 pages of transcript. The trial court's detailed judgment is 54 pages long. The parties relentlessly visited this Court during the pendency of the dissolution and can seemingly agree only that the marriage is irretrievably broken and cannot be preserved.

In 1985, Husband and Wife met and moved in together in 1986. In 1989, Husband, who previously worked in the mortgage industry, formed United Equity Mortgage ("UEM"). Facing financial difficulties, Husband sold the assets of UEM to a new corporation, American Equity Mortgage ("AEM"), for $800 in March of 1992.[1] At this time, Wife was listed as president, secretary, treasurer and sole director and shareholder of AEM. Prior to the creation of AEM, Wife had no experience in the mortgage industry. Once AEM was created, Husband operated in the capacity he had for years before at different mortgage companies.

In October of 1992, Husband filed for bankruptcy. In his bankruptcy filings, Husband indicated that he did not own or have an interest in AEM. In July of 1993

Husband and Wife were married. Husband and Wife lived together continuously until their separation in September of 2004.

In its dissolution decree, the trial court concluded that Wife should be awarded a significantly greater share of the parties' marital property. The trial court divided the marital property of nearly $73,000,000 in such a manner that Wife received over $61,000,000 and Husband received over $11,000,000.[2]

At issue in this dissolution was the nature and value of AEM. Wife maintained that AEM was her separate property while Husband contended that AEM was marital property. Wife further contended that Husband was judicially estopped from claiming a marital interest in AEM.

The trial court found that AEM was marital property and awarded the company to Wife. Post-trial, Wife moved to have the trial court reconsider the value of AEM, asserting that changes in the mortgage industry affected the value of AEM between the date of trial and the ultimate date of judgment. The trial court denied this motion. Wife appeals.

## II. DISCUSSION

Review of a judgment of dissolution is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment will be affirmed unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence or the judgment erroneously declares or applies the law. *Hoberock v. Hoberock*, 164 S.W.3d 26, 30 (Mo.App. E.D.2005). This court views the evidence and permissible inferences that may be drawn therefrom in a light most favorable

1. AEM opened for business one day after Husband sold UEM's assets to it.

2. Wife is required to pay Husband $16,000,000 over 4 years to "narrow the gap".

to the judgment. *Gross v. Helm*, 98 S.W.3d 85, 87 (Mo.App. E.D.2003).

▮ In her first point, Wife contends the trial court erred by refusing to apply the doctrine of judicial estoppel in that Husband was estopped from asserting an interest in AEM because he had earlier disclaimed any interest during his bankruptcy and during a 1994 deposition. We disagree.

▮ A review of Missouri case law reveals that whether judicial estoppel applies to bar a party from asserting an interest in property during division of property in a dissolution proceeding is an issue of first impression.[3] "Judicial estoppel applies to prevent litigants from taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at that time." *Besand v. Gibbar*, 982 S.W.2d 808, 810 (Mo.App. E.D.1998). While judicial estoppel cannot be reduced to a precise formula, the United States Supreme Court has indicated that whether judicial estoppel applies requires the consideration of three factors:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Zedner v. United States*, 547 U.S. 489, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)) (citations and internal quotation marks omitted).

In applying this doctrine, we must first determine whether Husband's position taken at the time of dissolution differed from the position taken at the time of bankruptcy. The trial court found that the term "interest" as used in Husband's bankruptcy petition was so vague in meaning that Husband's "denial that he had any 'interest' [in AEM] ... signified very little.'" A review of the record supports this conclusion. Husband's bankruptcy documents do not define "interest" and we agree with the trial court's assessment that the meaning of "interest" was not sufficiently clear to justify the application of judicial estoppel. Accordingly, the trial court did not err in finding that Husband's later position was not clearly inconsistent with his earlier position and in finding that judicial estoppel was consequently inappropriate. Having determined that Husband's initial stance did not conflict with his later stance, we need not discuss the remaining factors.

Wife also alleges that Husband was judicially estopped from asserting an interest in AEM due to statements made during a 1994 deposition. However, as the trial court noted, these statements merely indicated that Husband did not, at that time, own or ever own stock in AEM. This testimony is consistent with Husband's position asserted in the dissolution. The record shows that at all relevant times, AEM stock was titled in Wife's name. Conse-

---

**3.** We note that this court has addressed judicial estoppel in the context of proceedings after dissolution. Specifically, in *Jeffries v. Jeffries*, 840 S.W.2d 291, 294 (Mo.App. E.D. 1992), this Court held that a party seeking relief from child support mandated by an earlier dissolution decree was judicially estopped from claiming he was not the biological father of a child born prior to marriage.

quently, the trial court did not err in finding that judicial estoppel did not apply.

In addition, we note one particular detail about AEM having been titled in Wife's name. We find unpersuasive Wife's contention that AEM's stock was titled in her name, alone, for any reason other than convenience. At a time when Husband faced financial difficulties, Wife was aware that a business about which she knew nothing was being created and that she was to be president, secretary, treasurer, sole director and sole shareholder of that entity. The evidence suggests Wife was aware of the reason for listing her as owner of a mortgage company when she knew nothing about the mortgage business. Point denied.

In her second point, Wife alleges that the trial court erred in classifying AEM stock as marital property because Husband lacked standing to assert an ownership interest in that when he filed for bankruptcy protection, all of his assets became the property of his bankruptcy estate and, therefore, any interest in AEM no longer belonged to him.

Wife failed to present this argument at the trial level and raises it for the first time on appeal. "Issues raised for the first time on appeal are not preserved for review." *Savory v. Hensick*, 143 S.W.3d 712, 719 (Mo.App. E.D.2004). Further, we decline plain error review. Accordingly, point denied.

In her third point, Wife alleges the trial court erred in finding that AEM was marital property in that there was not sufficient evidence that Wife started the company in contemplation of marriage or that AEM otherwise became marital property. We disagree.

"In general, property acquired by a spouse prior to marriage is ... separate property upon dissolution of marriage, and property acquired during the marriage is marital property subject to division ..." *James v. James*, 108 S.W.3d 1, 4 (Mo.App. S.D.2002). However, property acquired in contemplation of marriage that is intended to be marital property has been construed to be marital property. *Selby v. Selby*, 149 S.W.3d 472, 489–490 (Mo.App. W.D.2004).

Here, substantial evidence supports the trial court's findings that Husband and Wife formed AEM in contemplation of marriage. The evidence shows that Husband owned a mortgage company that went out of business shortly before AEM was formed. Moreover, the inception of AEM was at a time when Husband and Wife were engaged and living together. Numerous witnesses testified that AEM's stock was titled in Wife's name as a matter of convenience because Husband suffered poor credit after the collapse of his prior company and that both Husband and Wife worked together as a team during those first years to grow AEM.

In addition, evidence regarding the capitalization of AEM supports a finding that AEM was formed in contemplation of marriage. The trial court found Husband's testimony credible, believing that he contributed approximately $7,000 to the startup of AEM. We defer to the trial court's credibility determinations. *In re Marriage of Denton*, 169 S.W.3d 604, 606 (Mo.App. S.D.2005). We find it incongruous that Husband and Wife would agree that Husband would in part fund AEM, devote his experience, and work in a high-level capacity, at a time when both planned to marry and Husband's credit was poor, yet title AEM in Wife's name, unless Husband and Wife began AEM in contemplation of marriage, intending that it would be marital property. Consequently, the trial court did not err. Point denied.

In her fourth point, Wife challenges the trial court's determination of AEM's value, asserting that the trial court erred in that the valuation date was not reasonably proximate to the effective date of the distribution of marital property. We disagree.

The parties agreed that AEM would be valued by the parties' experts as of December 31, 2005. "Stipulations are controlling and conclusive, and courts are bound to enforce them." *Zipper v. Health Midwest*, 978 S.W.2d 398, 410 (Mo.App. W.D.1998) (citation and internal quotation marks omitted). Wife has failed to present any persuasive rationale to support rejecting the stipulated date. Moreover, the trial court thoroughly analyzed the testimony from competing expert witnesses and evaluated each witness's words. "[T]he trial court can accept the opinion of one expert as to the value [of property] over another." *Nelson v. Nelson*, 195 S.W.3d 502, 507 (Mo.App. W.D.2006). Moreover, "when there is conflicting evidence regarding valuation of property, this Court defers to the trial court's resolution of the conflict." *Tarneja v. Tarneja*, 164 S.W.3d 555, 562 (Mo.App. S.D.2005). Accordingly, the trial court did not err in determining AEM's value. Point denied.

In her fifth and final point, Wife alleges the trial court erred in denying Wife's post-trial motion to reopen the evidence with respect to AEM's valuation in that significant time passed between the parties' valuation and the judgment during which the value of AEM fell due to a downturn in the mortgage industry. We disagree.

"The trial court is afforded wide discretion in determining whether to reopen a case...." *Foster v. Village of Brownington*, 76 S.W.3d 281, 287 (Mo.App. W.D.2002). "The trial court's decision as to whether to reopen a case will be reversed only upon a showing of abuse of discretion." *Id.* (citation omitted).

We find unconvincing Wife's argument that the trial court's "delay" from March to June makes the valuation date *agreed to by the parties* too remote to be accurate. In *Morgan v. Ackerman*, 964 S.W.2d 865, 869 (Mo.App. E.D.1998), the date of distribution was 30 to 40 months after evidence of valuation was received. There, this Court found that such a delay rendered the date of valuation not reasonably proximate to the effective date of distribution and mandated reversal. *Id.* This case is not *Morgan*.

Here, the trial court ruled within 90 days of the last day of trial. Digesting 11 days of testimony, reviewing the evidence that covered over 2,700 pages of transcript and drafting a 54 page judgment, undoubtedly takes time. In addition, as discussed above, any assertion that the date of valuation was inappropriate falls flat, in light of the parties' having chosen this date and in light of our deference to the trial court.[4] *See Tarneja*, 164 S.W.3d at 562. The trial court did not err in denying Wife's motion and bringing this case to an end. Point denied.

## III. CONCLUSION

The judgment is affirmed.

CLIFFORD H. AHRENS and GLENN A. NORTON, JJ., Concur.

---

4. Everyone involved in this case recognized that fixing the value of a business such as AEM is a "moving target."