Harrison H. **STRABLE**, Jr.,
Plaintiff/Appellant,

v.

**UNION PACIFIC RAILROAD CO.,**
Defendant/Respondent.

No. ED 97849.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 5, 2013.

Drew C. Baebler, Bauer & Baebler, St. Louis, MO, for Appellant.

Thompson Coburn, Nicholas J. Lamb, David Allen Dick, Co–Counsel, Ross Edwin Rochat, Co–Counsel, St. Louis, MO, for Respondent.

MARY K. HOFF, Judge.

Harrison H. Strable, Jr. (Strable) appeals from the grant of summary judgment in favor of Union Pacific Railroad Co. (Union Pacific) on his claim against Union Pacific, under the Federal Employers' Liability Act (FELA), alleging negligence which caused his traumatic and cumulative injuries during the course of his employment with the railroad. We affirm.

*Factual and Procedural Background*

In April 22, 2008, Strable submitted a personal injury report and pursued a claim against Union Pacific for alleged cumulative injuries as a trainman for over thirty-seven years. In February 2009, Strable suffered a fall that prevented him from working and submitted a report for traumatic injury to his head and back.

On July 15, 2009, Strable filed his seven-count petition in St. Louis County alleging he sustained traumatic injuries on February 4, 2009; that he sustained cumulative injuries over his thirty-seven-year employment with Union Pacific as a trainman; and that Union Pacific negligently caused him to suffer hearing loss. Strable never identified an expert regarding the cause of his hearing loss or provided any affidavit or evidence to support causation.

With respect to the bankruptcy proceedings at issue here, Strable and his wife have been the subject of and were represented by attorneys in two separate bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Iowa. The first bankruptcy was filed in June 1997 and was determined to be a no asset estate. It was terminated under Chapter 7 on September 10, 1997. The second bankruptcy was filed on August 2, 2007 under Chapter 13. On December 21, 2007, the bankruptcy court entered its plan confirming Strable's Chapter 13 Plan. While the second case was initiated as a Chapter 13 bankruptcy proceeding, it was eventually converted to Chapter 7 by Strable in November 2009 as a result of his failure to make the monthly payments required under his Chapter 13 Plan. It was ultimately terminated under Chapter 7 on February 17, 2010 with a complete discharge of debts, and on February 18, 2010, the case was concluded and closed.

During the pendency of the second bankruptcy, Strable filed Amended Schedules of Income and Expenditures to reflect changes in his bankruptcy estate, but did not file an amended Schedule of Assets reflecting his alleged cause of action against Union Pacific. At no point during the pendency of this bankruptcy proceeding did Strable disclose to the U.S. Bankruptcy Court for the Southern District of Iowa the existence of the instant cause of action.

On September 2, 2010, Strable was deposed regarding his involvement in any bankruptcy proceedings. Strable testified that he had been involved in only one bankruptcy, which commenced in 2003 and ended in 2007. The following colloquy occurred between Strable and counsel for Union Pacific on the matter:

Q: Have you ever filed for bankruptcy?

A: Yes.

Q: And when did you do that?

A: 2003

Q: And when was it discharged?

A: I don't recollect when it was discharged.

Q: You're still not on any type of bankruptcy plan, are you?

A: No.

Q: Did you make a certain amount of payments over a certain amount of time?

A: That already ended.

Q: When did that end, do you know?

A: I think that was for four years.

Q: Ever filed for bankruptcy before or after that?

A: No.

Q: Do you recall where you filed?

A: Polk County, Des Moines.

On June 16, 2011, Union Pacific filed its motion for summary judgment, arguing that Strable failed (1) to disclose the existence of this cause of action to the bankruptcy court, despite his obligation to do so, and therefore should be judicially estopped from pursuing his cause of action against Union Pacific, and (2) to produce evidence to prove causation of his alleged hearing loss. Specifically, Union Pacific alleged that Strable took a prior inconsistent position in the bankruptcy proceeding by failing to amend his bankruptcy schedules at the time of the conversion, that this omission was neither inadvertent nor mistaken, and that failure to estop Strable would result in his deriving an unfair advantage.

As a part of his response, Strable's attorney included his own affidavit regarding two attached letters discussing the effect of the FELA claim on the bankruptcy estate and whether the bankruptcy case needed to be re-opened given the pending FELA claim. Exhibit 2 purports to be a letter, dated March 28, 2011, from Strable's former bankruptcy attorney to the bankruptcy trustee informing the bankruptcy trustee that Strable had a workers compensation claim under FELA, offering to re-open the bankruptcy case to show the FELA claim and then "claim it as exempt." Exhibit 3 purports to be a letter, dated April 6, 2011, written in reply to the bankruptcy attorney's letter, and in which the bankruptcy trustee stated that he did not, "deem it necessary to re-open the case to administer a non-exempt asset," which he believed the FELA claim to be. Neither letter was accompanied by affidavit. Importantly, the only affidavit included was that of Strable's attorney stating, "that the attached exhibits are true and correct based upon my personal knowledge and belief." Union Pacific objected to the letters' admissibility on hearsay grounds, but the trial court never ruled on the objection.

The summary judgment motion was argued before the trial court on August 22,

2011. On December 5, 2011, the trial court granted Union Pacific's motion finding there was no genuine issue as to any material fact; that Union Pacific was entitled to judgment as a matter of law on the grounds of judicial estoppel; and that Strable's failed to identify an expert with respect to the hearing loss claim to prove causation. The trial court dismissed Strable's FELA action with prejudice. This appeal follows.

### Standard of Review

Our review of the trial court's grant of summary judgment is de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); *Loth v. Union Pacific R. Co.*, 354 S.W.3d 635, 641 (Mo.App. E.D. 2011). Summary judgment is appropriate where the moving party demonstrates a right to judgment as a matter of law based on facts as to which there is no genuine dispute. *Loth*, 354 S.W.3d at 641; Rule 74.04(c). We view the record in the light most favorable to the party against whom summary judgment is entered and accord the non-movant the benefit of all reasonable inferences from the record. *Butler v. Burlington N. & Santa Fe Ry.*, 119 S.W.3d 620, 621 (Mo.App. W.D.2003).

A "defending" party may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) the non-movant has not been able to produce, or will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any of the claimant's elements; or (3) there is no genuine dispute as to the existence of facts necessary to support the movant's properly pleaded affirmative defense. *ITT Commercial Finance Corp.*, 854 S.W.2d at 381. The non-movant must show by affidavits, depositions, answers to interrogatories, or admissions on file that one or more of the material facts shown by the movant to be without any genuine dispute is, in fact, genuinely disputed. *Id.* A "genuine issue" exists where the record contains competent materials that establish a plausible, but contradictory, version of the movant's essential facts. *Id.* at 382.

### Judicial Estoppel

In his first and second points, Strable argues the trial court erred in entering summary judgment in favor of Union Pacific on the basis of judicial estoppel because the trial court misapplied or ignored the analysis in *Loth* and it erroneously concluded Strable would derive an unfair advantage if not estopped from proceeding with his FELA claims. We disagree.

Judicial estoppel applies to prevent litigants from taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at that time. While judicial estoppel cannot be reduced to a precise formula, the United States Supreme Court has indicated that whether judicial estoppel applies requires the consideration of three factors: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo.App. E.D.2007). When present, these three factors "firmly tip the balance of equities in favor of barring" the subse-

quent action. *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). However, "the doctrine [of judicial estoppel] does not apply when a party's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead and manipulate the court." *Loth*, 354 S.W.3d at 638. In other words, a court should apply judicial estoppel if the party did not act "inadvertently." *Henry v. Kan. City S. R.R. Co.*, 2010 WL 3613795 (W.D.La. Sept. 8, 2010).

■■■ Equitable outcomes in bankruptcy depend on full and ongoing disclosure of assets. The Bankruptcy Code explicitly provides that, "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim." 11 U.S.C. § 1329(a). In exchange for Chapter 13 protections, the Bankruptcy Code imposes a statutory duty upon a debtor, "an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir.1999) (*citing* 11 U.S.C. § 521). All lawsuits and even potential claims must be disclosed, whether "contingent, dependent or conditional." *Id.* at 208. Federal courts do not think this duty trivial: "[v]iewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized." *Id.*

■■■ Therefore, debtors have "an ongoing duty to amend their schedule of assets in bankruptcy proceedings, including those acquired after a bankruptcy court has confirmed a bankruptcy plan." *Id.* ("The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action"). Even after confirma-

tion, the Chapter 13 bankruptcy case remains open and the debtor "is required to disclose all pending and potential claims to the bankruptcy court until his case is closed, dismissed, or converted." *Henry*, 2010 WL 3613795, *4.

■■■ Rule 74.04(c)(1) states in pertinent part with respect to the requirements for a summary judgment motion:

A motion for summary judgment shall summarily state the legal basis for the motion.

A statement of uncontroverted material facts shall be attached to the motion. The statement shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts. . . .

Attached to the statement shall be a copy of all discovery, exhibits or affidavits on which the motion relies.

Movant shall file a separate legal memorandum explaining why summary judgment should be granted.

Rule 74.04 requires the movant to set forth a specific basis for summary judgment and list specific references to the record to support the basis for summary judgment so the opposing party, the trial court, and the appellate court are apprised of the movant's claim of entitlement to summary judgment. *Pub. Sch. Retirement Sys. of Missouri v. Taveau*, 316 S.W.3d 338, 343 (Mo.App. W.D.2010). Because the underlying purpose of Rule 74.04 is directed toward helping the court expedite the disposition of the case, compliance with the rule is mandatory. *Id.*

Here, in his summary judgment motion, Strable alleged that he commenced his Chapter 13 bankruptcy on August 2, 2007,

and was represented by legal counsel. On December 21, 2007, the bankruptcy court confirmed a repayment plan. A few months later, on April 22, 2008, Strable submitted a personal injury report for back, neck, and spine cumulative injuries to Union Pacific. On February 4, 2009, he submitted a personal injury report for head and back traumatic injuries to Union Pacific. Then, on July 15, 2009, while his Chapter 13 bankruptcy case was still pending, Strable commenced this action against Union Pacific. In September 2010, following the termination of his bankruptcy six months earlier, Strable testified that it had ended in 2007. When Strable converted his Chapter 13 bankruptcy to a Chapter 7 bankruptcy, he filed Amended Schedules of Income and Expenditures to reflect changes in his bankruptcy estate, but did not file an Amended Schedule of Assets reflecting his alleged cause of action against Union Pacific. In fact, until it was revealed during the discovery process by Union Pacific, Strable never disclosed to the bankruptcy court the existence of this cause of action.

Strable relies heavily on *Loth* to argue that Union Pacific's summary judgment motion should have been denied. The instant case is readily distinguishable from *Loth*. While the court in *Loth* considered judicial estoppel in the FELA context, it was under facts very different from those presented here.

In *Loth*, the plaintiff filed an FELA action in September 2003. *Id.* at 636. About six months later, he filed a Chapter 7 bankruptcy and did not disclose his pending FELA action. *Id.* at 637. The bankruptcy court granted him a discharge in July 2004. *Id.* In August 2008, while his FELA suit was still pending, the plaintiff voluntarily asked the bankruptcy court to re-open his case in order to list as an asset his FELA claim that he had "inadvertent-

ly" omitted. *Id.* The bankruptcy court allowed the plaintiff to re-open his case to list the FELA case as an asset. *Id.* Nearly a year later, in July 2009, the railroad moved for summary judgment in the FELA case and asserted that the doctrine of judicial estoppel barred plaintiff's FELA action because plaintiff had failed to list it as an asset when obtaining a discharge of his debts in bankruptcy court. *Id.* Unlike in the instant case, however, in *Loth*, there was no question that the plaintiff re-opened his bankruptcy case and listed the FELA lawsuit as an asset *before* the defendant first raised the issue of judicial estoppel in the FELA lawsuit in July 2009 in its summary judgment motion. *Id.*

Moreover, the plaintiff in *Loth* submitted a detailed affidavit to oppose summary judgment. *Id.* The plaintiff's affidavit explained the specific advice that his attorney had provided which advised him that he did not need to list the FELA lawsuit as an asset. *Id.* The plaintiff in *Loth* also presented a detailed affidavit from the bankruptcy trustee indicating that the plaintiff had voluntarily self-reported his claim and re-opened his bankruptcy, that the plaintiff and his creditors were in the same position as if he had timely disclosed the lawsuit, that the plaintiff had not claimed an exemption for the lawsuit, and that the plaintiff's creditors would receive the benefit of any recovery in his FELA lawsuit. *Id.* at 639–40.

The Court went on to state that, given the conflicting evidence about the plaintiff's intent and motives, the trial court erred by concluding that "motive" negated the plaintiff's evidence of "inadvertence," and that the trial court either "disregarded or disbelieved plaintiff's evidence." *Id.* at 642.

We note the substance and legal posture of *Loth* are distinguishable from the case at bar. Strable has not submitted any

sworn affidavit on any issue of fact verifying that his conduct in failing to list his FELA claims was inadvertent. He also did not include affidavits of his bankruptcy attorney and bankruptcy trustee regarding their conclusions. Moreover, Strable did not re-open his bankruptcy, despite being on notice of this issue.

Here, unlike the defendant in *Loth*, Union Pacific presented uncontroverted evidence that Strable violated his statutory duty to disclose his lawsuit as an asset and then obtained a complete discharge from all obligations to his creditors. Also, unlike the plaintiff in *Loth*, Strable here presented no admissible evidence to explain his breach of his statutory obligations to obtain a discharge. Unlike *Loth*, no credibility determination needed to be made in this case due to Strable's insufficient responses. In other words, Strable failed to meet his burden to illustrate that some facts asserted in support of Union Pacific's motion are genuinely disputed and should be decided at trial.

The uncontroverted facts established that Strable, when facing dismissal of his Chapter 13 bankruptcy due to non-payment, changed his schedules to reflect a drop in income but did not change his schedules to reflect his FELA lawsuit as an asset. He then converted to Chapter 7 bankruptcy and obtained a complete discharge from all debts, without ever disclosing his FELA lawsuit asset to the bankruptcy court or his creditors. Thus, Union Pacific presented evidence to support judicial estoppel. In contrast, Strable presented no affidavit or admissible evidence to rebut Union Pacific's evidence. He presented no personal affidavit to explain his own conduct but only unsworn letters from the bankruptcy attorney and the bankruptcy trustee. As such, Strable did not take even basic steps to sufficiently oppose summary judgment. "Before a document may be received in evidence, it must meet a number of foundational requirements including relevancy, authentication, best evidence rule, and hearsay." *Asset Acceptance v. Lodge*, 325 S.W.3d 525, 528 (Mo.App. E.D.2010). Letters written by and between non-parties and offered as exhibits are not only irrelevant as to the parties but also inadmissible as hearsay. *Dine v. Williams*, 830 S.W.2d 453, 457 (Mo.App. W.D.1992) (letter written by hospital to accreditation board was not admissible in medical malpractice suit against attending physicians; letter was hearsay and did not fit within exception for admission of a party-opponent, since hospital was not a defendant and attending physicians could not be bound by admission of hospital). Here, none of the letters offered as Exhibits by Strable are authenticated. Each of the letters consists of hearsay and asserts legal conclusions.

Strable provided the following evidence in response to Union Pacific's summary judgment motion: that in March 2011, Strable's bankruptcy attorney contacted the bankruptcy trustee offering to re-open the bankruptcy case to show the FELA claim and then claim it as exempt (Exhibit 2); that on April 6, 2011, the bankruptcy trustee stated that he agreed with the bankruptcy attorney's analysis that Strable's "workers compensation claim" would be exempt and that it would not be necessary to re-open the case to administer a non-exempt asset (Exhibit 3); that on April 11, 2011, according to a letter drafted by Strable's bankruptcy attorney for the 2007 filing, it was not necessary to reopen the bankruptcy estate to claim any exempt assets like the FELA case and that the bankruptcy trustee agreed with his position (Exhibit 1). The only affidavit Strable included was by his attorney in the FELA case that "the attached exhibits are true and correct based upon my personal

knowledge and belief." Based upon Rule 74.04 and *Loth,* these submissions were insufficient to defeat Union Pacific's summary judgment motion.

Rule 74.04(c) provides in pertinent part:

(1) Motions for Summary Judgment. A motion for summary judgment shall summarily state the legal basis for the motion.

A statement of uncontroverted material facts shall be attached to the motion. The statement shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts.

\* \* \*

■ (2) Responses to Motions for Summary Judgment. Within 30 days after a motion for summary judgment is served, the adverse party shall serve a response on all parties. The response shall set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements.

A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial. . . .

A response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph.

The response may also set forth additional material facts that remain in dispute, which shall be presented in consecutively numbered paragraphs and supported in the manner prescribed by Rule 74.04(c)(1).

Here, Strable did not support each denial with specific references as required to establish the existence of specific facts showing a genuine issue for trial. The only citation he provided was to inadmissible hearsay that was not sworn, that was not an affidavit, that was not authenticated, and did not constitute legal authority of any kind. Turning first to the affidavit, Rule 74.04 requires that affidavits filed in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 74.04(e). Strable's attorney's affidavit is deficient in at least two respects: 1) it fails to set forth any facts (let alone specific ones), and 2) it does not demonstrate that Strable's attorney is competent to testify as to the contents of the attached letters. Such deficiencies result in a failure to challenge the other party's allegations of fact. *Fowler v. Nutt,* 207 S.W.3d 146, 148 (Mo.App. E.D.2006).

■ Because Strable has failed to comply with Rule 74.04(c)(2) regarding responsive pleadings, the facts set forth in Union Pacific's summary judgment motion were admitted under Rule 74.04(c)(2). The requirements of Rule 74.04(c)(2) are mandatory, where a party's response to a motion for summary judgment fails to comport with such requirements, the facts asserted in the motion for summary judgment are to be taken as true. Rule 74.04(c)(2); *Wehmeyer v. FAG Bearings Corp.,* 190 S.W.3d 643, 651 (Mo.App. S.D.2006). Here, the court is left searching Strable's suggestions in opposition for factual non-hearsay statements that can be construed as a denial of a similar factual averment

contained in Union Pacific's motion for summary judgment in order to ascertain which factual statements were admitted or denied by Strable. *Wehmeyer*, 190 S.W.3d at 651. For these reasons, there is no evidentiary basis for what Strable claims are genuine issues of material fact. "A claim, unsupported by facts in evidentiary form [on the issue raised by summary judgment] is not sufficient to support or preserve a disputed fact issue." *Baldwin v. Jim Butler Chevrolet, Inc.*, 926 S.W.2d 555, 557 (Mo.App. E.D.1996) (affirming summary judgment for defendant where "Plaintiff presented no contrary facts, in evidentiary form ... to preserve a genuine issue of material fact" to survive summary judgment). Due to these deficiencies in Strable's "supporting" affidavit, Strable failed to demonstrate that there were any genuine issues as to those facts set forth in Union Pacific's pleadings. Accordingly, under Rule 74.04(c)(2), each of the facts in Union Pacific's statement of uncontroverted material facts is deemed admitted and summary judgment for Union Pacific is proper.

Under both *Loth* and Rule 74.04, if Strable wanted to claim "inadvertence" or that he relied upon his bankruptcy lawyer, Strable was required to submit an affidavit. Strable has not submitted any affidavit, and thus has not offered any explanation for his conduct. Because Strable failed to comply with the requirements of Rule 74.04 in that he failed to demonstrate specific facts showing that there is a genuine issue for trial, Union Pacific's facts are deemed admitted.

With respect to the issue of judicial estoppel, Missouri and federal cases have recognized that if a party seeks to avoid judicial estoppel because that "party's prior position was based on inadvertence or mistake," then the party seeking to avoid judicial estoppel must present evidence of "inadvertence." *In re Contest of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137, 142 (Mo.App. W.D.2011) (*quoting New Hampshire*, 532 U.S. at 753, 121 S.Ct. 1808). Here, Strable did not present any admissible evidence to explain his conduct, and thereby create a genuine issue of material fact. The trial court did not err in entering summary judgment in favor of Union Pacific. Point I is denied.

### Hearing Loss

In his third point, Strable argues the trial court erred in granting summary judgment on Counts VI and VII of his petition concerning his hearing loss claim because he provided sufficient evidence to prove a causal relationship between the work environment and the resulting injury.

Strable argues he was not required to produce expert testimony to support the allegation that Union Pacific's negligence caused any hearing loss, under the relaxed FELA causation standard. Even if this were the law, he was nonetheless required to disclose those claims, together with the other neck and back claims, in the bankruptcy. Because Union Pacific presented uncontroverted evidence that Strable violated his statutory duty to disclose his lawsuit as an asset, and Strable failed to identify the existence of a genuine issue of material fact preventing summary judgment on the issue of inadvertence, the trial court properly granted summary judgment in favor of the railroad. Point III is denied.

### Conclusion

The judgment is affirmed.

KATHIANNE KNAUP CRANE, Presiding Judge, concurs.

LISA S. VAN AMBURG, Judge, dissents in separate opinion.

LISA S. VAN AMBURG, Judge, dissenting.

I respectfully dissent. I believe Strable was not afforded the benefit of all reasonable inferences regarding his intention when he failed to disclose his pending FELA claim throughout his bankruptcy proceeding.

The nonmovant in a summary judgment is to be given the benefit of all reasonable inferences. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). This means if the movant requires an inference to establish the right to summary judgment and the evidence reasonably supports any inference other than, or in addition to, the movant's inference, a genuine dispute exists and the movant's prima facie showing fails and movant is not entitled to summary judgment. *Id.* Summary judgment should not be granted unless evidence could not support any reasonable inference for the nonmovant. *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007).

In deciding whether to apply the doctrine of judicial estoppel, courts invariably consider whether the debtor's omission was inadvertent or mistaken. *Eastman v. Union Pacific Railroad Co.,* 493 F.3d 1151, 1157 (10th Cir.2007). Courts consider a failure to disclose inadvertent or mistaken when the debtor either had no knowledge of the undisclosed claim or had no motive to conceal the claim. *Id.*

Union Pacific alleged Strable took a prior inconsistent position in the bankruptcy proceeding by failing to amend his bankruptcy schedules at the time of the conversion and this omission was neither inadvertent nor mistaken. Union Pacific asserted no other facts to establish Strable's motive. Strable's motive to conceal can only be established by drawing an inference. Thus, Union Pacific requires an inference to establish its right to summary judgment.

A rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies. *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1049 (8th Cir.2006). Careless or inadvertent disclosures are not the equivalent of deliberate manipulation.[1] *Id.* Courts should only apply the doctrine as an extraordinary remedy when a party's inconsistent behavior will result in a miscarriage of justice. *Id.*

Although the record may well support an inference Strable's failure to disclose his FELA claim was a deliberate decision designed to manipulate or mislead the court to his advantage, it also supports an inference Strable did not engage in such a connivance, but rather simply made an innocent mistake of omission. The circumstances surrounding Strable's nondisclosure militate against any inferences of dubious motive, and therefore, the evidence reasonably supports an inference other than the one Union Pacific urges.

As the majority noted, Strable offered two letters discussing the effect of the FELA claim on the bankruptcy estate and whether the bankruptcy case needed to be re-opened given the pending FELA claim.

---

1. *See, e.g., Vinson v. Vinson,* 243 S.W.3d 418 (Mo.App. E.D.2007) (affirming the trial court's decision to reject judicial estoppel when a husband claimed an asset in the divorce proceeding that he failed to list on a prior bankruptcy schedule of assets). The trial court had found the bankruptcy schedule instructions for listing of assets to be "vague." *Id.* at 422.

One letter, dated March 28, 2011, is from Strable's former bankruptcy attorney to the bankruptcy trustee informing the bankruptcy trustee Strable had a workers' compensation claim under FELA, and offering to re-open the bankruptcy case to show the FELA claim and then claim it as exempt. The other letter, dated April 6, 2011, was written by the bankruptcy trustee in reply to the bankruptcy attorney's letter, and stated he did not, "deem it necessary to re-open the case to administer a non-exempt asset," which he believed the FELA claim to be. The letters were accompanied by Strable's attorney's own affidavit stating, "that the attached exhibits are true and correct based upon my personal knowledge and belief." Union Pacific objected to the letters' admissibility on hearsay grounds, but the trial court never ruled on the objection.

Extrajudicial statements of third persons contained in letters or testimony, though hearsay in the sense that contents could not be used to prove any of the matters asserted therein, were nevertheless admissible to show intent of a party. *See Venator v. Venator,* 512 S.W.2d 451, 455 (Mo.App. E.D.1974); *Replogle v. Replogle,* 350 S.W.2d 735, 737 (Mo.1961). Thus, the two letters Strable submitted from his bankruptcy attorney and the bankruptcy trustee may be considered in the summary judgment record as evidentiary support for the inference that his omission in failing to update his bankruptcy schedule was not due to bad faith. Specifically, I believe the letters can be considered not to show that Strable was not required to reopen the bankruptcy case and disclose the claim, but rather to show he did not intend to manipulate or mislead the bankruptcy court.

Intent is proven by circumstantial evidence in nearly every case, and failure to provide direct evidence of such intent is an improper basis for summary judgment.

*Schroeder v. Duenke,* 265 S.W.3d 843, 848 (Mo.App. E.D.2008). We view circumstantial evidence no differently from direct evidence when determining whether there was a genuine issue as to any material fact so as to preclude summary judgment. *Id.* Knowledge, intent, motive, and the like are elusive facts, and rarely is it appropriate to grant summary judgment in cases where the facts must be proven by circumstantial evidence. *Id.*

It is difficult to determine the motives of others, particularly on the basis of a cold record. *See Loth v. Union Pacific R. Co.,* 354 S.W.3d 635, 643 (Mo.App. E.D.2011). In the context of employment-discrimination cases, the Missouri Supreme Court has cautioned that summary judgment should rarely be used in those type cases because such cases are inherently fact-based and often depend on inferences rather than on direct evidence. *Daugherty,* 231 S.W.3d at 818. Courts would do well to heed this advice when considering whether to grant summary judgment on the basis of judicial estoppel. *See Loth,* 354 S.W.3d at 643.

I believe there are two plausible competing inferences to be drawn from the facts set forth by the parties. Therefore, a genuine issue of material fact exists, making summary judgment improper based on Union Pacific's claim of judicial estoppel. I rest my decision on this court's standard of review in summary judgment cases, which affords the nonmovant the benefit of all reasonable inferences, and I make no determination on the merits of applying the doctrine of judicial estoppel in this case.

Accordingly, I would reverse the trial court's judgment and remand the cause for a trial on the merits.