

## Missouri Court of Appeals
### Southern District
#### Division Two

| | | |
|---|---|---|
| RHONDA PARROTT, as Surviving Spouse of JAMES KELSO PARROTT, Deceased, and Individually, | ) ) ) ) | |
| Plaintiff-Respondent, | ) ) | |
| vs. | ) ) | No. SD32470 |
| SEVERS TRUCKING, LLC, and BRANDON G. BLACK, | ) ) ) | Filed February 7, 2014 |
| Defendants-Appellants. | ) ) | |

APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY

Honorable Timothy W. Perigo, Circuit Judge

REVERSED AND REMANDED

Rhonda Parrott ("Plaintiff") filed a wrongful death action against Brandon Black and Severs Trucking, LLC ("Severs"), (collectively "Defendants") for the death of her husband James Parrott ("James").[1] Defendants appeal the trial court's judgment entered on a jury verdict in favor of Plaintiff. Defendants raise seven points of alleged trial court error. Defendants' first point—the trial court erred in instructing the jury under Missouri law instead of Oklahoma law on the issue of whether Black's conduct in a motor vehicle accident that occurred in Oklahoma was tortious—has merit, and we reverse and remand

---

[1] Because Plaintiff shares the same surname, we use James' first name for purposes of clarity. No familiarity or disrespect is intended.

for a new trial. Due to that disposition, we need not address any of Defendants'
remaining points except for their fourth point claiming that Plaintiff's wrongful death
claim is barred by judicial estoppel. It has no merit and is denied.

## Factual and Procedural History

The facts relevant to our disposition of this appeal are not in dispute. On April 4,
2007, James was operating a 2003 International semi tractor-trailer on U.S. Highway 69
in Mayes County, Oklahoma. Near the intersection of U.S. Highway 69 and county road
EW 620, in the state of Oklahoma, James collided into the rear of a 2001 Peterbuilt semi
tractor-trailer operated by Black during the course and scope of Black's employment with
Severs. James suffered an injury to his kneecap for which he received outpatient surgery
less than a month after the collision. Sometime during the night following his surgery or
early the next morning, James suffered a heart attack that resulted in his death.

Plaintiff filed suit against Defendants in the Circuit Court of Newton County,
Missouri, alleging that Black negligently operated his tractor-trailer unit and that such
negligence directly caused or directly contributed to cause the wrongful death of James.
While having initially asserted in her pleadings that the laws of Oklahoma should apply
to all substantive issues of tort and recovery of damages, Plaintiff later filed a trial brief
that instead argued that Missouri law should be applied.[2] Plaintiff's argument was based
on the choice-of-law factors enumerated in section 145 of the Restatement (Second) of
Conflict of Laws. Defendants opposed the application of Missouri law and instead
countered that Oklahoma law should be applied. Before trial, the trial court determined

---

[2] Plaintiff relied on the following relevant facts: She and James were Missouri residents, and James was
employed by Colonial Freight, a Missouri corporation; Black was a Missouri resident employed by Severs,
a Missouri limited liability company; at the time of the collision, the 2003 International semi tractor-trailer
operated by James and the 2001 Peterbuilt semi tractor-trailer operated by Black were each registered in
Missouri; and James underwent surgery for his kneecap in Missouri and later died in his Missouri home.

the issue in favor of Plaintiff, specifically ruling "Missouri has the most significant relationship to the occurrence and parties and Mo. is entitled to have Missouri law determine issues." Plaintiff was granted leave to file her second amended petition, which alleged in part that "Black owed a duty to operate the 2001 Peterbuilt Semi Tractor Trailer in compliance with the rules of the road of the State of Missouri[.]"

The matter went to trial before a jury. The instruction packet included comparative fault verdict directors based upon negligence under Missouri Approved Instructions ("MAI") 37.01, modified by 20.02 and 19.01. Plaintiff's verdict director stated in part that the jury must assess a percentage of fault to Defendants if it believed Black either "failed to keep a careful lookout" or "failed to yield the right of way"; that Black was thereby negligent; and that such negligence "directly caused or directly contributed to" cause James' death. To define "negligent" or "negligence," the trial court submitted to the jury MAI 11.03, which was offered by Plaintiff and based on the statutory language of section 304.012,[3] requiring "the highest degree of care" from motorists ("Instruction 7"). Instruction 7 provided: "The term 'negligent' or 'negligence' as used in these instructions means the failure to use the highest degree of care. The phrase 'highest degree of care' means that degree of care that a very careful person would use under the same or similar circumstances."

Defendants, however, maintained the contention that the definition of negligence should comport with the law of Oklahoma, which Defendants alleged required drivers to exercise "ordinary care." Before the submission of the instruction packet to the jury,

---

[3] All references to statutes are to RSMo 2000, unless otherwise indicated.

Defendants offered MAI 11.07 ("Instruction A")[4] to define "negligent" or "negligence,"

which the trial court received but marked as "refused."

Following deliberations, the jury returned a verdict for Plaintiff and against

Defendants, attributing ninety-five percent of fault for the collision to Defendants and

five percent of fault to James. The jury awarded Plaintiff damages of $1,620,000.

Judgment was entered on September 12, 2012, for $1,539,000, plus court costs.

Defendants now appeal asserting seven points of alleged trial court error.

Defendant's first point is dispositive.

## Discussion

### *Oklahoma Law Applies to Establish Defendants' Duty of Care*

In their first point, Defendants claim that the trial court erred in submitting

Instruction 7 because the duty of care as defined therein was improperly based upon

section 304.012, rather than applicable Oklahoma law.[5] Defendants also allege that

> Oklahoma applies a standard of ordinary care for operators of motor
> vehicles on its highways whereas Missouri applies a standard of the
> highest degree of care and, as such, the jury was improperly instructed and
> [Defendants] were held to a higher standard of care than that to which they
> should have been held.

---

[4] Instruction A provided: "The term 'negligent' or 'negligence' as used in these instructions means the failure to use ordinary care. The phrase 'ordinary care' means that degree of care that an ordinary careful person would use under the same or similar circumstances."

[5] Plaintiff contends that Defendants' challenge to Instruction 7 was not properly preserved for appeal. Defendant initially raised this issue before trial by filing a motion seeking a determination that Oklahoma law applies to the case in response to Plaintiff first asserting in her trial brief, contrary to her then-pending petition, her contention that Missouri law should be applied. Defendants objected to and contested Plaintiff's request to amend her petition to allege that Missouri law applied, which the trial court subsequently sustained. Following Plaintiff's opening statement, during which Plaintiff referenced the "highest degree of care" standard, Defendants specifically objected to the application of Missouri law to establish Defendants' duty of care and asserted their contention that Oklahoma law should instead be applied. In response, the trial court, without any objection from Plaintiff, granted Defendants a "continuing objection throughout the trial" on the issue. Defendants further noted and asserted their continuing objection at the instruction conference during their response to Plaintiff's offer of Instruction 7 and their offer of Instruction A. Defendants also raised the issue in their motion for a new trial. Defendants have preserved the issue for our review. *See Syn, Inc. v. Beebe*, 200 S.W.3d 122, 136 (Mo.App. 2006).

4

The question of which state's law applies is a question of law for the court. ***Wilson v. Image Flooring, LLC***, 400 S.W.3d 386, 391 (Mo.App. 2013). Determination of the appropriate standard of care is also a question of law. ***Lopez v. Three Rivers Elec. Co-op., Inc.***, 26 S.W.3d 151, 158 (Mo. banc 2000). "Whether the jury was properly instructed is a question of law, which we review *de novo*." ***Bradford v. BJC Corp. Health Servs.***, 200 S.W.3d 173, 178 (Mo.App. 2006).

All parties recognize and acknowledge that, when determining choice-of-law issues relating to a tort action generally, Missouri courts apply the "most significant relationship test" as set out in section 145 of the Restatement (Second) of Conflict of Laws and adopted by Missouri in ***Kennedy v. Dixon***, 439 S.W.2d 173 (Mo. banc 1969). By its terms, section 145 is framed upon and is viewed in light of section 6 of the Restatement (Second) of Conflict of Laws. ***Griggs v. Riley***, 489 S.W.2d 469, 473 (Mo.App. 1972) ("The basic principles governing choice of laws are those enumerated in § 6. Section 145 simply provides that certain contacts may be taken into account in determining the choice of law under the principles of § 6.").

Turning our attention to section 6, we observe that it begins by stating in subsection (1) that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(1) (1971). Only "[w]hen there is no such directive," do we proceed to analyze the enumerated "factors relevant to the choice of the applicable rule of law[.]"[6] ***Id.*** at

---

[6] The enumerated factors are:
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,

§ 6(2). Neither Defendants nor Plaintiff have directed us to a Missouri statute explicitly directing choice-of-law in the factual scenario before us, and we cannot find such a statute applicable to this case. Indeed, the comments to section 6 state that "[a] court will rarely find that a question of choice of law is explicitly covered by statute[,]" but further observes that "the court will constantly be faced with the question whether the issue before it falls within the intended range of application of a particular statute." *Id.* at § 6 cmt. b. This case presents that precise question—whether section 304.012 was applied consistent with its intended range of geographical applicability.

Section 304.012 states in pertinent part:

> 1. Every person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

A plain reading of section 304.012.1 suggests that the statute's geographic range is limited to "the roads and highways *of this state*," i.e., Missouri. (Emphasis added). This conclusion is supported by *State v. Rowe*, 63 S.W.3d 647 (Mo. banc 2002), where our supreme court interpreted similar language found within section 302.321.1.[7] The issue in that case was whether Rowe, an Iowa resident whose Iowa driver's license had been indefinitely suspended and revoked, could be convicted under section 302.321.1 for driving a motor vehicle in the state of Missouri. *Rowe*, 63 S.W.3d at 648. The supreme court found that the language "under the laws *of this state*," (emphasis added) as used in

---

    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2).
[7] Section 302.321.1, as addressed by the *Rowe* court, provided:
    A person commits the crime of driving while revoked if he operates a motor vehicle on a highway when his license or driving privilege has been canceled, suspended or revoked *under the laws of this state* and acts with criminal negligence with respect to knowledge of the fact that his driving privilege has been canceled, suspended or revoked.
*Rowe*, 63 S.W.3d at 648-49 (emphasis added).

section 302.321.1, was unambiguous and precluded the statute's application to Rowe because his driving privilege had not been "canceled, suspended, or revoked under the laws of this state[.]"[8] *Rowe*, 63 S.W.3d at 649–50.

With regard to section 304.012.1, the legislature imposed the duty that operators of motor vehicles exercise the highest degree of care but explicitly limited such to "the roads and highways of this state[.]" By its plain meaning, section 304.012.1 is inapplicable to operators of motor vehicles on the roads and highways of Oklahoma. The geographic scope of section 304.012.1 is clear, and "[w]hen the words are clear, there is nothing to construe beyond applying the plain meaning of the law." *Rowe*, 63 S.W.3d at 649. "Legislative intent can only be derived from the words of the statute itself." *Id.* at 650. Our conclusion is further compelled by the Restatement, which recognizes that

> [t]he court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect. If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid. On the other hand, if the legislature intended that the statute should be applied only to acts taking place within the state, the statute should not be given a wider range of application.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. b.

Therefore, because section 304.012 does not apply outside the geographical boundaries of the state of Missouri, it cannot "conflict" with the law of Oklahoma, and the choice-of-law factors enumerated in section 6(2) of the Restatement (Second) of Conflict of Laws have no applicability. As a matter of law, it was error for the trial court to submit Instruction 7, premised upon the application of section 304.012, to the jury for

---

[8] Section 302.321.1 has since been amended to apply where a "person's license or driving privilege has been cancelled, suspended, or revoked under the laws of this state or any other state[.]" Section 302.321.1, RSMo Cum.Supp. 2011.

its determination of the tortiousness of Black's conduct in a vehicular accident that occurred on roads in Oklahoma.

Finding the submission of Instruction 7 to be erroneous does not end our inquiry, however. We must also address whether its submission prejudiced Defendants. *See Lopez*, 26 S.W.3d at 158. Instruction 7, based upon section 304.012.1, defined "negligent" or "negligence" as "the failure to use the highest degree of care." The phrase "highest degree of care" was defined as "that degree of care that a very careful person would use under the same or similar circumstances." *See* MAI 11.03 (7th ed.). Defendants contend, and Plaintiff disputes, that Oklahoma law mandates a lower degree of care on its roads and highways—that of "ordinary care," defined in Oklahoma's Uniform Jury Instructions as "the care which a reasonably careful person would use under the same or similar circumstances." OUJI-Civ. No. 9.3 (2012 ed.).

Defendants' contention has merit. In *Agee v. Gant*, 412 P.2d 155 (Okla. 1966), the Supreme Court of Oklahoma construed title 47, section 11-801(a) of the 1961 Oklahoma Statutes[9] as requiring drivers of motor vehicles to use "that degree of care which is reasonable and prudent under the circumstances." *Agee*, 412 P.2d at 158–59. Subsequent Oklahoma cases have reiterated this standard. *E.g.*, *Dirickson v. Mings*, 910 P.2d 1015, 1018 (Okla. 1996) (citing *Agee*); *Fuller v. Pacheco*, 21 P.3d 74, 78 (Okla.Civ.App. 2001) (citing *Dirickson*). In our view, nothing about "reasonable and

---

[9] The statute addressed by *Agee* remains in force today, largely unchanged from its 1961 version, and currently provides:

> Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.

OKLA. STAT. tit. 47, § 11-801(a) (2008); *see also Agee*, 412 P.2d at 158.

8

prudent" suggests a duty beyond exercising "the care which a reasonably careful person would use under the same or similar circumstances" as stated in the Oklahoma uniform jury instruction defining "ordinary care." Nothing in the Oklahoma case law or statute supports a duty to use the *highest* degree of care on Oklahoma roads as is required on Missouri roads by section 304.012.[10]

When a jury instruction imposes upon a party a standard of care greater than that required by law, prejudice is ordinarily presumed and is rarely rebutted. *Lopez*, 26 S.W.3d at 158. Our supreme court "has consistently held that an instruction that imposes upon a party a standard of care higher than that required by law is prejudicial, requiring a new trial." *Id.* (citing *Schlegel v. Knoll*, 427 S.W.2d 480, 485 (Mo.1968); *Toburen v. Carter*, 273 S.W.2d 161, 165 (Mo.1954); *Oesterreicher v. Grupp*, 119 S.W.2d 307, 308

---

[10] Our conclusion is bolstered by the fact that for a brief period between 1917 and 1921, a Missouri statute employed standard of care language for motorists similar in scope to that of Oklahoma. The Missouri statute, which lacked any mention of motorists exercising "the highest degree of care," only provided: "Every person operating a motor vehicle on the public highway of this state shall drive the same in a *careful and prudent manner*, and at a rate of speed so as not to endanger the property of another or the life or limb of any person." *Burlingame v. Landis*, 242 S.W.2d 578, 580 (Mo. 1951) (quoting § 7585, R.S. 1919) (emphasis added). According to our supreme court in *Burlingame*, "[t]he requirement to drive 'in a careful and prudent manner' exacted of motorist the exercise of ordinary care; that is: 'that degree of care required of ordinarily careful and prudent persons in the same or similar circumstances.'" *Id.* In 1921, Missouri repealed and reenacted the RSMo Chapter on Motor Vehicles, adding the requirement that motor vehicle drivers "exercise the highest degree of care." *Id.* (quoting § 304.010, R.S.1949; § 8383, R.S.1939). Underscoring that the standards of care were distinct, the *Burlingame* court stated:

> In repealing the Motor Vehicle act of 1917 and enacting the act of 1921 reinstating the exaction of the highest degree of care of motorists upon the public highways, the Legislature recognized the existence of different degrees of care. The General Assembly construed the phrase "in a careful and prudent manner" of the act of 1917 as subjecting motorists only to the exercise of ordinary care and by the act of 1921 again, in express words, imposed upon motorists the exercise of the highest degree of care.

*Id.* at 581 (internal citations omitted).

(Mo.1938); ***Borgstede v. Waldbauer***, 88 S.W.2d 373, 376 (Mo. banc 1935)).  We are not convinced by Plaintiff's argument otherwise.[11]  Defendants' first point is granted.

Finding Defendants' first point to be dispositive in requiring a remand for a new trial, we need not address any of Defendants' remaining points other than their fourth point.[12]  "Issues that are not essential to a disposition of the case should not be addressed."  ***S & P Props., Inc. v. Daly***, 330 S.W.3d 128, 130 (Mo.App. 2010) (quoting ***O'Hare v. Permenter***, 113 S.W.3d 287, 289 (Mo.App. 2003)) (internal quotations omitted).  Because Defendants' fourth point, if meritorious, would require outright reversal rather than remand, we next address it.

### *Plaintiff's Wrongful Death Cause of Action not Barred by Judicial Estoppel*

In their fourth point, Defendants contend that Plaintiff's wrongful death claim is barred under the doctrine of judicial estoppel.[13]

> "Judicial estoppel applies to prevent litigants from taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at that time.  While judicial estoppel cannot be reduced to a precise

---

[11] Plaintiff cites ***Fowler v. Park Corp.***, 673 S.W.2d 749 (Mo. banc 1984), for the proposition that reversal is not required where instructional error results in a higher than appropriate degree of care being imposed.  The supreme court in ***Lopez***, however, specifically distinguished ***Fowler*** in the following manner:

> In ***Fowler***, because the appellant failed to preserve its instructional error challenge, this Court declined to apply the presumption of prejudice. ***Id.*** at 757. ***Fowler***, therefore, merely eliminated the opportunity for sandbagging. Specifically, ***Fowler*** sought to prevent a party faced with an erroneous instruction from waiting without objecting so that they could request a new trial only in the event the jury returned an unfavorable verdict. *See **Root***, 981 S.W.2d at 656.

***Lopez***, 26 S.W.3d at 158 n.4.  Here, as discussed in footnote 5, *supra*, Defendants timely and specifically objected to Instruction 7, thereby rendering ***Fowler*** inapplicable to the instant case. *See **id.***

[12] Because conflicts-of-law questions are resolved on an issue-by-issue basis, ***Livingston v. Baxter Health Care Corp.***, 313 S.W.3d 717, 722 (Mo.App. 2010), our resolution of the conflict question on the precise issue addressed in Defendants' first point should not be construed in any manner as addressing or resolving any other conflict-of-laws questions on other issues in this case, which may or may not arise upon retrial.

[13] To the extent that Defendants contend in their point relied on that issue preclusion/collateral estoppel or claim preclusion/res judicata also apply, such contentions are not developed in their argument under this point and are therefore abandoned.  *See **Jones v. Jones***, 296 S.W.3d 526, 528 n.1 (Mo.App. 2009).

formula, the United States Supreme Court has indicated that whether judicial estoppel applies requires the consideration of three factors: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Strable v. Union Pac. R.R. Co.*, 396 S.W.3d 417, 421 (Mo.App. 2013) (quoting *Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo.App. 2007)).

Defendants base their argument on a workers' compensation stipulation for compromise settlement agreement executed on August 24, 2010 ("settlement agreement"). An administrative law judge approved the settlement agreement, which was entered into by Plaintiff, on behalf of James, as his dependent; James' employer, Colonial Freight ("Colonial"); and Colonial Freight's insurer, Liberty Mutual Insurance Company ("Liberty"). Under the settlement agreement, "it [was] agreed by the parties to enter into a compromise lump sum settlement" where Colonial and Liberty paid Plaintiff $10,543.40 based upon a 17.5% disability of James' right knee as a result of the April 4, 2007 tractor-trailer collision with Black. Defendants contend that Plaintiff's wrongful death cause of action is "contradictory" to this settlement agreement.[14]

We are not persuaded by Defendants' argument. The settlement agreement does not indicate that the collision between James and Black resulted "only" in injury to James' right knee, as Defendants contend. Neither does the settlement agreement reflect that Plaintiff took the position that James' death did not result from the collision. Indeed, under the terms of the settlement agreement, the parties agreed to compromise because

---

[14] We construe this contention as an argument that Plaintiff's later position in this wrongful death action is "clearly inconsistent" with her earlier position in the workers' compensation settlement, thereby satisfying the first factor of judicial estoppel mentioned in *Strable*.

11

"there are dispute(s) between the parties to accident; injury; medical causation; wage and compensation rate; nature and extent of disability; responsibility for medical, past, present and future; statute of limitations; notice; and disfigurement." In short, the settlement agreement is not "clearly inconsistent" with Plaintiff's wrongful death claim against Defendants, and Defendants do not provide us with any case law to suggest otherwise.[15] One of Defendants' strained arguments is that Plaintiff is not allowed to recover for both injury to decedent and wrongful death of decedent, which, in the abstract, is correct. Point denied.

## Decision

Our grant of Defendants' first point requires the case to be remanded for a new trial as to both the issue of Defendants' liability and Plaintiff's damages. "[I]n a comparative fault case, the issues of fault and damages are blended and interwoven, and it would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of the damages to be eventually awarded to the plaintiff." *Secrist v. Treadstone, LLC*, 356 S.W.3d 276, 285 (Mo.App. 2011) (quoting *Talley v. Swift Transp. Co.*, 320 S.W.3d 752, 756 (Mo.App. 2010)) (internal quotations omitted).

The judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

GARY W. LYNCH, J. - Opinion author

JEFFREY W. BATES, P.J. - concurs

---

[15] Defendants solely rely on *Strable*. There, the plaintiff was judicially estopped from pursuing a Federal Employers' Liability Act ("FELA") lawsuit because he failed to comply with a statutory duty to disclose the FELA lawsuit as an asset in bankruptcy court before securing bankruptcy relief. *Strable*, 396 S.W.3d at 419-20, 422, 424. As held by the court, Strable's position in his bankruptcy case that he had no other assets was clearly inconsistent with the existence of his later-asserted FELA claim. *Id.* at 424. Defendants fail to explain and we fail to see how the facts in *Strable* are analogous to those in the instant case.

12

DON E. BURRELL,  J. - concurs