**Shirley WEHMEYER, Plaintiff–Appellant,**

v.

**FAG BEARINGS CORP., and Charlie Workes, Defendants–Respondents.**

No. 26970.

Missouri Court of Appeals, Southern District, Division Two.

May 9, 2006.

---

Lynne Jaben Bratcher, Bratcher Gockel & Kingston, L.C., Kansas City, and Patrick M. Martucci, The Hershewe Law Firm, P.C., Joplin, MO, for Appellant.

Chuck D. Brown, Warten, Fisher, Lee and Brown, L.L.C., Joplin, for Respondent.

PHILLIP R. GARRISON, Judge.

Shirley Wehmeyer ("Plaintiff") appeals a summary judgment entered in favor of FAG Bearings Corp. ("Defendant").[1] Plaintiff contends that she was actually or constructively discharged and discriminated against in that Defendant forced her to accept a layoff or move to a shift she was unable to work; that she was not allowed to exercise bumping or recall rights even though she did not have job restrictions that would have prevented her from exercising those rights; and that the trial court decided material facts that should have been left to a jury. We disagree and affirm.

In 1988, Plaintiff was employed by Defendant, a manufacturer and assembler of bearings. Over the years Plaintiff worked in various positions in the plant until April 1998 when she bid for, and accepted an OD helper job,[2] on the third shift.[3]

On June 24, 1998, Plaintiff suffered an on-the-job injury to her right elbow. Sallie Howell ("Howell"), the company nurse, made an appointment for Plaintiff with Dr. Brian Murphy ("Dr.Murphy"), who diagnosed a right elbow strain and told Plaintiff to use Advil and ice and to come back in two weeks. In his report, Dr. Murphy stated, Plaintiff "[m]ay return to work today," except that she was "[n]ot qualified to do [her] current job/physically." Plaintiff filed a workers' compensation claim and returned to work the next day.

Before Plaintiff was injured, she bid on an angular contact job and a cylindrical line job, both of which paid a higher wage than the OD helper job. Charlie Workes ("Workes") was the small factory unit manager responsible for the section of the plant in which Plaintiff worked. The day of the injury he informed Plaintiff that she had received the bid for the cylindrical line

---

1. A co-defendant, Charles Workes, was dismissed from the suit prior to summary judgment being entered.

2. OD Helper is located in the large bearing grinding department. This job requires moderate strength and lifting, light reaching and light stooping and kneeling. Working conditions are repetitious and weight limitations are a minimum of five pounds, average of thirty pounds, and maximum of seventy pounds.

3. FAG Bearings operates twenty-four hours a day consisting of three shifts; first shift from 7:00 a.m. to 3:00 p.m.; second shift from 3:00 p.m. to 11:00 p.m.; and third shift from 11:00 p.m. to 7:00 a.m.

job,[4] and asked her whether she wanted to work on the second or third shift. Plaintiff told Workes that she could not work on the second shift because she cared for her children during those hours. Accordingly she was given the third shift job.

On August 3, 1998, Dr. Murphy again examined Plaintiff and restricted her lifting to thirty pounds. Plaintiff was still experiencing pain in her elbow and on August 18, 1998, Dr. Murphy gave her a Cortisone injection and restricted the use of her right arm for two weeks. On a form he filled out, Dr. Murphy checked the line stating, "Employee not physically able to perform current job task without high risk of re-injury." At that time, there were no third shift jobs available that Plaintiff could physically perform with her weight restrictions, so she was removed from the cylindrical line and temporarily transferred to the first shift to work on a small cylinder cell assembly job.

On September 1, 1998, Plaintiff once again saw Dr. Murphy whose diagnosis was "Epichondyltus Resolved" and "No findings—Resolved," and whose treatment plan was: "Recomend [sic] Deep Grove Line Work Placement," which was a job on a lighter parts line. There was no mention of a weight restriction on the copy of the report Plaintiff was given. Notwithstanding that, the copy of the report that Dr. Murphy sent to Defendant stated that Plaintiff had a "Permanent Weight Restriction to 20lbs with Rt Arm," and a check mark appeared by the line "Employee not physically able to perform current job task without high risk of re-injury." Plaintiff returned to work the next day and told Workes and Howell that she had been released from the doctor with no restrictions, showing them her copy of the

report she received. Later that day she was told by John Carlson ("Carlson"), the Human Resources Manager for Defendant, that she was going to be laid off because Dr. Murphy told him that she had a twenty-pound permanent weight restriction. When Plaintiff told Carlson that she had no such weight restriction, he directed that she have endurance testing.

A "Functional Capacity Evaluation" was conducted on Plaintiff on September 15, 1998, and she was given a permanent upper body weight restriction of lifting no more than fifteen pounds at any job location. That restriction disqualified Plaintiff from the third shift OD helper job, but she continued to work on the small cylinder cell assembly job on the first shift.

In February 1999, Plaintiff's elbow began hurting again. She went to see Howell and was again referred to Dr. Murphy who prescribed Advil for the pain and sent her to physical therapy. The pain in her elbow continued so Plaintiff returned to see Dr. Murphy on March 11, 1999, at which time she was given another Cortisone injection in her elbow. She returned for a follow-up visit with Dr. Murphy on March 25, 1999, and was diagnosed with "pain over Rt elbow improved. Pain decreased[.] Full range of motion," and released "[f]rom [w]orkers' [c]ompensation." He also cleared her to return to "regular" duty with no restrictions.

In May, 1999, Plaintiff informed Charles Sommer ("Sommer"), supervisor of small cylindrical assembly and safety director, as well as Howell, that she did not have a weight restriction. When Sommer insisted that was incorrect, Plaintiff called Dr. Murphy's office to inquire about her medical status. An employee of Dr. Murphy's

---

**4.** The cylindrical line was located in the large bearing assembly department. This job requires heavy strength and lifting, moderate reaching and moderate stooping and kneeling. The weight limitations are minimum two pounds and maximum eighty pounds.

office, Lola Law, told Plaintiff that she did not have a weight restriction, and faxed a letter to Howell stating that Plaintiff "was released from work comp and returned back to regular duty." On May 21, 1999, however, Dr. Murphy sent a letter to Howell clarifying Plaintiff's work restrictions stating, "I have released her to full duty with no restrictions on her CURRENT job. This *does not* clear her for duty on any other job in the plant."

Meanwhile, from December 1998 through May 1999, Defendant experienced a decreased demand for its bearings, and implemented a reduction in force which eliminated several positions. In making the reductions in force, management decided how many of a certain job classification they would not need on a particular shift. They then gave the most senior employees, whose jobs were being eliminated, the option to bump[5] another employee with less seniority. Employees also had the option to volunteer for layoff with a one-year recall right.

In an effort to discover what positions Plaintiff was medically able to fill, she was again referred to Dr. Murphy on May 24, 1999. He recommended that she have another "Functional Capacity Evaluation" of her upper extremity, which was conducted on May 25 and 26, 1999. On May 27, 1999, Dr. Murphy sent a letter to Howell reporting the findings of the evaluation in which he said that Plaintiff could not work on the OD helper job because she could not safely lift more than twenty pounds for thirty-three percent of her shift or twenty-five pounds for one percent of her shift.

On May 28, 1999, Carlson and Workes consulted about Plaintiff, and determined that there were no jobs open on the third shift which met Plaintiff's weight limitations, and she did not have enough seniority on the first shift to bump into the open job classification. The only position open that Plaintiff was medically able to perform was on the second shift with the same pay and benefits as her then current job. Approximately one week later, Carlson told Plaintiff that the only job available was a second shift job, and Plaintiff stated that she could not work the second shift because of her small children. He then stated that the "only other thing we have for you is layoff." Plaintiff declined to take the job and elected layoff status.

Defendant had a policy which allowed qualified workers who had elected layoff status to have recall rights for one year. If an employee is laid off and a position comes available within the year, Defendant automatically asks them to come back to work. Defendant maintains that during the one-year period no positions became available which met Plaintiff's physical limitations and her shift preference.

Plaintiff filed a petition claiming, that Defendant engaged in unlawful employment practices in violation of Section 287.780 by discriminating against or discharging her in retaliation for her exercising her workers' compensation rights.[6] Defendant filed a motion for summary judgment which was granted. Plaintiff now appeals.

Plaintiff raises three points of error on this appeal. In Points I and II, she argues that the trial court erred in granting sum-

---

5. Defendant has a seniority system in which an employee with seniority may "bump" the least senior person in their classification on their shift. If they have no seniority to bump the person on their shift, they could bump the least senior person in that classification on any shift. Plaintiff had approximately eleven years seniority.

6. All references to statutes are to RSMo (2000) unless otherwise indicated.

mary judgment because Defendant either actually or constructively discharged and otherwise discriminated against her in that she was told that she had to work a shift she was unable to work or be terminated, and that she was not able to exercise bumping or recall rights. In Point III, she argues that the trial court erred in granting summary judgment to Defendant in that the court decided material facts that were in dispute by finding that she could not perform the jobs she claims were available, and that her being laid off was not a termination or a constructive termination.

For the sake of clarity we first consider Point III. We give no deference to the trial court's grant of summary judgment in favor of Defendant as the propriety of summary judgment is strictly an issue of law. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When considering an appeal from a summary judgment, we use the same principles employed by the trial court in determining whether to grant summary judgment. *Id.* Furthermore, we view the record in the light most favorable to the non-movant. *Id.* All facts set forth by affidavit or otherwise in support of summary judgment are taken as true unless contradicted by the non-movant's response. *Id.*

A defending party is entitled to summary judgment if he can show:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the "defending party," each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.

*Id.* at 381.

Once movant has met this burden, the non-moving party may only avoid summary judgment being entered against her if she can "show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Id.*

■ We must first determine whether Defendant has established a prima facie case for summary judgment regarding Plaintiff's claim of retaliatory discharge. Retaliatory discharge is governed by Section 287.780 which contains four elements: 1) plaintiff must have been an employee of defendant prior to the injury; 2) plaintiff has exercised a right under the Missouri Workers' Compensation Act; 3) employer's discharge of or discrimination against plaintiff; and 4) an exclusive causal relationship between plaintiff's invocation of a right and defendant's actions. *St. Lawrence v. Trans World Airlines, Inc.*, 8 S.W.3d 143, 149 (Mo.App. E.D.1999).

■ Defendant has made a showing, in accordance with Rule 74.04,[7] that the reason it offered Plaintiff the position on second shift only was not because of some retaliatory motive, but because she was physically unable to perform any other

---

**7.** All references to rules are to Missouri Rules of Civil Procedure (2005) unless otherwise indicated.

available work. In support, Defendant provided evidence that Plaintiff had a weight restriction and that she could not safely work in any position in which she would be asked to lift more than twenty pounds for more than thirty-three percent of her shift, or twenty-five pounds for more than one percent of her shift. Defendant concedes that as an eleven-year veteran of the company Plaintiff ordinarily would have enjoyed bumping and recall rights. However, Defendant's showing demonstrates that none of those positions on the shifts she was willing to work complied with her weight restriction. Therefore, Defendant concludes, company economics, combined with Plaintiff's physical condition were the reasons for her being let go, not retaliation for her having filed a workers' compensation claim. These alleged facts, if true, would clearly make it impossible for Plaintiff to prove the fourth element of her claim, that the filing of a workers' compensation claim was the exclusive cause of Defendant's actions. "Causality ... does not exist if the basis for the discharge is valid and nonpretextual." *Coleman v. Winning,* 967 S.W.2d 644, 648 (Mo.App. E.D.1998). Therefore, Defendant has met its prima facie case for summary judgment.

■ We now turn to whether Plaintiff has met her resulting burden to illustrate that some facts asserted in support of Defendant's motion are genuinely disputed, and should be decided at trial. In doing so, we compare the facts relied on by Defendant in support of its motion for summary judgment with Plaintiff's response in an attempt to glean whether Plaintiff has effectively demonstrated the existence of a genuine issue of material fact.

■ Rule 74.04(c)(2) provides the requirements of a response to a summary judgment motion and states in pertinent part:

> The response shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs.
>
> A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is genuine issue for trial.
>
> . . . .
>
> A response that does not comply with this Rule ... with respect to any numbered paragraph in movant's statement is an admission of the truth of the numbered paragraph.

The requirements of this rule are mandatory. *Chopin v. American Auto. Ass'n of Mo.,* 969 S.W.2d 248, 250 (Mo.App. S.D. 1998). It requires that there be a response to movant's factual statement enumerating specifically which facts the opposing party disputes. *Id.* at 251. This allows a reviewing court, whether it is the trial court or the appellate court, to clearly understand precisely which facts the nonmovant disputes. *Id.* We treat as true any facts alleged in a properly pleaded summary judgment motion not disputed by non-movant. *See* Rule 74.04(c)(2); *Cornejo v. Crawford Co.,* 153 S.W.3d 898, 902 (Mo.App. S.D.2005).

In this case, for instance, Defendant's paragraph 11 of its statement of uncontroverted material facts in support of its motion for summary judgment ("motion for summary judgment") states:

> On May 27, 1999, after review of the functional capacity evaluation of May 25 and 26, 1999, [Dr. Murphy] confirmed that Plaintiff could not work on the O.D.

helper job due to her weight restrictions and confirmed this with [Howell].

The weight restriction mentioned in this paragraph, and the exhibit it cites as support, demonstrate that Dr. Murphy found that Plaintiff could not work on the O.D. helper job because it was not safe for her to lift more than twenty pounds for thirty-three percent of a shift, or twenty-five pounds for one percent of her shift. Because this fact provides an alternative reason for Plaintiff's layoff and therefore defeats her claim of retaliatory discharge, it was necessary for Plaintiff to expressly deny it in her response, citing supporting evidence in the record.

Plaintiff's response to paragraph 11 simply states:

> Plaintiff responds to Defendant's Statement of Facts as follows:
>
> . . . .
>
> 11. Plaintiff controverts the allegations in this paragraph. See Plaintiff's facts, paragraphs 50—78.[8]

The "Plaintiff's facts" referred to in the response were individually numbered paragraphs contained in her suggestions in opposition to Defendant's motion for summary judgment ("suggestions in opposition"). It therefore appears that Plaintiff has attempted to incorporate numerous paragraphs (in this instance twenty-eight) from her suggestions in opposition into each denial contained in her response. The numbered paragraphs of her suggestions in opposition that she has cited do not correspond to the numbered paragraphs in Defendant's motion. Nor do they expressly admit or deny any factual averment in Defendant's motion.

This response does not comply with Rule 74.04. The rule expressly states that the "*response* shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2) (emphasis added). Plaintiff's response only makes reference to her suggestions in opposition. Although specific references to particular discovery, exhibits or affidavits do appear in Plaintiff's suggestions in opposition, Plaintiff may not simply incorporate a factual statement from her suggestions in opposition into her response to Defendant's motion for summary judgment. *Peck v. Alliance General Ins. Co.,* 998 S.W.2d 71, 75 (Mo.App. E.D.1999). "Rule 74.04(c)[ (2) ] is clear that references to the record must appear in the response." *Id.* Incorporation by reference does not satisfy this requirement. *Id.*

Even if incorporation by reference were permissible, those paragraphs of her suggestions in opposition referenced by Plaintiff in her response do not expressly admit or deny any fact alleged in Defendant's motion. Plaintiff has simply denied the factual averment in her response, but cited to multiple paragraphs of her suggestions in opposition in support of that denial. Essentially, we are left searching Plaintiff's suggestions in opposition for factual statements which can be construed as a denial of a similar factual averment contained in Defendant's motion for summary judgment. We are not required to "compare each averment in [P]laintiff's suggestions to each averment in [Defendant's] motion for summary judgment in order to ascertain which factual statements were admitted or denied by plaintiff." *In re Estate of Clifton,* 69 S.W.3d 500, 502 (Mo. App. S.D.2001) (plaintiff filed no response at all and simply relied on its responsive

---

8. Plaintiff's response to the other paragraphs of Defendant's motion were similarly non-specific and referenced from one to twenty-eight paragraphs of Plaintiff's suggestions in opposition to the motion.

pleading). Therefore, we are justified in considering the factual allegations in paragraph 11 of Defendant's motion as true.

■ Regardless of the procedural deficiencies in Plaintiff's response, those paragraphs of her suggestions in opposition to which Plaintiff directs us do not raise a genuine dispute as to a material fact. Plaintiff admits that Defendant was experiencing economic difficulties which resulted in it having to make cutbacks beginning in December 1998. We understand Plaintiff to allege in her suggestions in opposition that the weight restriction given to her by Dr. Murphy in May 1999 was only a pre-text so that Defendant could "get rid" of her. However, she has failed to provide documentation that Dr. Murphy's conclusions were flawed, or that her weight restriction was not justified at that time. Nor does she demonstrate that even with a legitimate weight restriction there were other positions which she could have performed in addition to the one offered to her. Therefore, because that weight restriction, if true, defeats the fourth element of Plaintiff's claim, (that retaliation was the exclusive cause of her discharge or discrimination) Defendant was entitled to summary judgment. Point III is denied.

In Point I, Plaintiff argues, essentially, that she was discharged and discriminated against by "being told that either she was terminated or had to work on a shift for which she informed [Defendant] that she was unavailable to work." This point is made irrelevant by our finding that Defendant made its prima facie case for summary judgment on the fourth element of Section 287.780 (exclusive causality) as opposed to the third element of Section 287.780 (employers discharge of, or discrimination against employee). Here Plaintiff is simply arguing that she was actually discriminated against or discharged. However, Defendant must only show facts negating one of Plaintiff's elements, as opposed to all four. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. Point I is denied.

Likewise, Point II was effectively decided above with our finding that Plaintiff failed to illustrate that there was a genuine dispute of material facts. Plaintiff argues that she was not allowed to exercise bumping and recall rights "even though she did not have job restrictions that would have prevented her from exercising those rights." As noted above, although Plaintiff argues on this appeal that no restriction existed, she acknowledges that Dr. Murphy issued a weight restriction. Furthermore, she does not allege that Dr. Murphy's diagnosis was incorrect. Nor does she argue that even if it was correct, that, other than the position offered to her, there were other jobs available that she was physically able to perform. Point II is denied.

Accordingly, the trial court's entry of summary judgment in favor of the Defendant is affirmed.

BATES, C.J., and BARNEY, J., concur.