

# Missouri Court of Appeals
## Southern District

### In Division

ASIA ASHBY,                          )
                                             )
       Plaintiff-Appellant,         )
                                             )
vs.                                  )          No. SD37420
                                             )
WOODRIDGE OF MISSOURI, INC.,          )          **Filed:  August 17, 2023**
et al.,                              )
                                             )
       Defendants-Respondents.       )

### APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

The Honorable John D. Beger, Judge

### <u>AFFIRMED</u>

Asia Ashby ("Ms. Ashby") appeals from the trial court's grant of summary judgment dismissing her disability discrimination and workers' compensation retaliation claims against Woodridge of Missouri, Inc., d/b/a Piney Ridge Center and REP Perimeter Holdings, LLC d/b/a Perimeter Healthcare (collectively, "Piney Ridge") under the Missouri Human Rights Act ("MHRA") and Workers' Compensation Law.  Ms. Ashby raises six points of alleged trial court error on appeal.  Finding no merit in any of her points, we affirm the trial court's judgment.

**Factual Background and Procedural History**

Ms. Ashby began working for Piney Ridge as a case manager on January 2, 2018. Piney Ridge is a Level Four alcohol and substance abuse residential treatment facility for children and adolescents. The patients at Piney Ridge are treated for substance abuse, mental health, and sexual abuse, among other needs. A Level Four residential facility is the highest-level facility designation in terms of safety and security.

Piney Ridge has a zero-tolerance Drug and Alcohol-Free Workplace Safety policy (the "Policy") prohibiting employees from being under the influence or having drugs or alcohol in one's system during company time or on company premises. The Policy provides that employees will be subject to drug testing in certain situations, including pre-employment, post-offer, post-accident, reasonable suspicion, random, and upon return to work. Any positive test result will receive a second confirmation test using a different analytical process by a testing lab. A drug test result is deemed "positive" under the Policy if both tests are positive, and any positive test result is deemed a violation of the Policy. Any employee who fails a drug or alcohol test will be removed from work and is subject to disciplinary action, including termination. Piney Ridge's Policy does not forbid the legal use of prescription and non-prescription drugs but requires employees to disclose such use to Piney Ridge before working:

> when taking medication containing alcohol or any drug that poses a significant risk of substantial harm to the health and safety of . . . themselves or others, or that renders the employee unable to perform the essential functions of the job, or that could in any way interfere with proper performance of their duties.

Ms. Ashby understood the requirements of her job included "the ability to follow ALL policies and procedures," which she acknowledged both when she signed the case

2

manager job description and in her deposition. One of those policies Ms. Ashby agreed to follow was the Policy. When Piney Ridge hired Ms. Ashby as a full-time employee, she signed a consent and release form for drug and alcohol testing, and she disclosed on the form the medications she was taking that may affect a drug test result but did not list hydrocodone or hydromorphone. Her test came back negative at that time.

Piney Ridge's policy for employees injured on the job required Ms. Ashby to take another drug and alcohol test when she reported being injured after attempting to break up a fight between two Piney Ridge residents on July 11, 2018. She signed her second consent and release form for drug and alcohol testing and wrote in four medications on the form that may have affected the outcome of the test. She, again, did not list hydrocodone or hydromorphone. Her test result came back "negative."

Ms. Ashby was later randomly selected for a drug test under the Policy on January 22, 2019. She signed her third consent and release form for drug testing, the same form she had signed at least twice before. She did not list any medications she was taking that could affect the test results in the blank space provided on the form. The initial test result came back positive for opioids, and, pursuant to the Policy, Piney Ridge sent the presumptive positive result to a lab for a confirmation test. Ms. Ashby had never informed anyone she had a medical condition which required her to take opioids prior to the random drug test. She also never previously informed anyone she had a disability or other medical condition, and she never asked anyone at Piney Ridge for a reasonable accommodation for a disability "because she did not need an accommodation." When asked if she had a current prescription for opioids and if so, to provide it, Ms. Ashby did not provide one.

Piney Ridge suspended Ms. Ashby pending the results of the second confirmation drug test. While she was suspended, on January 24, 2019, Ms. Ashby contacted Nancy Patel ("Ms. Patel"), Piney Ridge's Human Resources Manager, regarding her positive test result. Ms. Ashby indicated she did not know why she tested positive and began brainstorming about what caused the test result. She asked Ms. Patel whether having sexual intercourse with her husband, who takes medication daily, the morning of the random drug test could have caused her to test positive for opioids. Ms. Patel informed Ms. Ashby that, pursuant to the Policy, she would have to provide a valid, current prescription at the time she tested positive to excuse her positive result.

Ms. Ashby later provided Piney Ridge a prescription for hydrocodone dated April 24, 2017, from Dr. Nathan Ratchford ("Dr. Ratchford"). Dr. Ratchford was Ms. Ashby's OB/GYN doctor, and had prescribed her hydrocodone for postsurgical pain after her tubal ligation surgery in 2017. The prescription had an "end" date of April 28, 2017.[1] Ms. Ashby provided a list of her prescriptions she had printed out, which showed another doctor prescribed her an additional 10 tablets of hydrocodone that same day. Ms. Ashby's prescription directed her to take one to two tablets every four hours as needed for pain post-surgery. She agreed, had she taken two tablets every four hours, she would

_____

[1] Ms. Ashby "[d]enied" Piney Ridge's phrase "the prescription ended on April 28, 2017" as ambiguous. She did not support this denial with any "specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there [was] a genuine issue for trial" as required by Rule 74.04(c)(2). Provided medical records reveal Ms. Ashby's prescription for hydrocodone stated "Start 4/24/2017" and "End 4/28/2017[.]" Because her response to Piney Ridge's summary judgment motion did not comply with Rule 74.04(c)(2), it "is an admission of the truth of" the matter asserted. All rule citations are to Missouri Court Rules (2023), unless otherwise indicated.

4

have finished her prescription in two and a half to three days. The 2017 prescription for hydrocodone prescribed after Ms. Ashby's tubal ligation surgery was the only prescription she provided Piney Ridge after her positive drug test, and she never supplied a current prescription for hydrocodone to treat back pain.[2]

On January 25, 2019, while she was still suspended and after the first positive test for opioids, Ms. Ashby reported a work-related injury to Piney Ridge. Ms. Ashby claimed she injured her neck and back on January 21, 2019, one day before the random drug test, while moving her office furniture. She filled out an Employee Accident Report for her alleged injury, stated she wanted to see a workers' compensation physician for her injury, and she then did so. The physician did not prescribe Vicodin for her alleged injury, but Ms. Ashby explained she took one of her father's prescribed Vicodin pills on January 21, 2019, the evening preceding the random drug test, without consulting a doctor or seeking any medical care and without informing anyone at Piney Ridge.

The result of the confirmation drug test came back on January 26, 2019. It confirmed the presence of hydrocodone and hydromorphone, and the levels of each drug in Ms. Ashby's system were higher than the cut off levels used in the initial test. Piney Ridge compared the confirmation lab test results to Ms. Ashby's 2017 prescription and concluded she did not have a valid, current prescription for hydrocodone. Piney Ridge

---

[2] Ms. Ashby "denied" she never provided a "current" prescription because Piney Ridge had not defined "current" and disputed Piney Ridge's characterization of the 2017 prescription for hydrocodone as "outdated" and not "current" or "valid." Again, these denials did not use specific references to discovery, exhibits, affidavits, or other evidence demonstrating there was a "genuine issue for trial." Rule 74.04(c)(2). We deem these, and all of Ms. Ashby's other deficient denials, as admissions of the matters asserted.

5

subsequently terminated Ms. Ashby's employment on January 28, 2019, for violating the Policy.

Ms. Ashby filed a charge with the Missouri Commission on Human Rights (the "Commission"). She claimed Piney Ridge discriminated against her "because of a disability or a perceived disability" relating to "a false perception" of drug addiction. The Commission granted her a right to sue, and she alleged discrimination claims under the MHRA and Workers' Compensation Law. The trial court granted summary judgment in favor of Piney Ridge on both of Ms. Ashby's claims, and she now appeals.

**Standard of Review**

Summary judgment is appropriate when the moving party can show there is no genuine dispute as to material facts and, on that basis, movant is entitled to judgment as a matter of law. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020); *Morelock v. Intercontinental Hotels Grp. Res., LLC.*, 644 S.W.3d 843, 847 (Mo. App. S.D. 2021). A defending party may prove it is entitled to summary judgment by showing (1) facts negating any one of the elements of an alleged claim, (2) the non-moving party has not been able to, and will not be able to, produce evidence sufficient to establish any one of the necessary elements of a claim after a reasonable discovery period, or (3) there is no genuine dispute as to the facts necessary to support an affirmative defense. *Lisle v. Meyer Elec. Co., Inc.*, 667 S.W.3d 100, 103 (Mo. banc 2023). Once a movant has met any of these burdens, the non-moving party can avoid summary judgment by showing – by affidavit, deposition, interrogatory answers, or admissions on file – there is a material fact remaining in dispute. *Green*, 606 S.W.3d at 117; *Hartwell v. Am. Fid. Assurance Co.*, 607 S.W.3d 807, 813 (Mo. App. S.D. 2020).

6

An appellate court "reviews the grant of summary judgment *de novo* and will affirm if summary judgment was appropriate on any basis supported by the record." ***Wilson v. City of St. Louis***, 662 S.W.3d 749, 754 (Mo. banc 2023). With respect to the factual basis supporting a grant of summary judgment, however, an appellate court does not review the whole trial court record. *See **Green***, 606 S.W.3d at 118-19.

> [1] Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework. [2] Courts determine and review summary judgment *based on that Rule 74.04(c) record, <u>not</u>* the whole trial court record. [3] Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.* [4] [S]ummary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone.*

> *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo. App. S.D. 2016) (emphasis in original) (internal footnotes and quotation marks omitted). Taken together, these summary judgment principles require a court to "determine whether *uncontroverted* facts established via Rule 74.04(c) paragraphs and responses demonstrate [movant's] right to judgment *regardless of other facts or factual disputes.*" *Pemiscot County Port Authority* [*v. Rail Switching Servs., Inc.*], 523 S.W.3d [530,] 534 [Mo. App. S.D. 2017] (emphasis in original).

*Id.* at 117–18. We review the record in the light most favorable to the non-moving party. ***Newton v. Mercy Clinic E. Cmtys.***, 596 S.W.3d 625, 628 (Mo. banc 2020).

### Analysis

Ms. Ashby raises six, interrelated points on appeal challenging the trial court's grant of summary judgment against her. For ease of analysis, we consider Ms. Ashby's points out of order and points one, two, and three together.

7

<u>Points One, Two, and Three – Piney Ridge Showed Ms. Ashby did not Produce, and
Could not Produce, Evidence Sufficient to Establish Ms. Ashby had a Disability under
the MHRA</u>

Ms. Ashby's points one and two allege the trial court erred in granting summary

judgment in Piney Ridge's favor on her discrimination claim for an alleged disability

under the MHRA. She argues in her points relied on as follows:

> Point One: The trial court erred in entering summary judgment for [Piney
> Ridge] on [Ms. Ashby's] claim for disability discrimination under the
> Missouri Human Rights Act, RSMo § 213.111 because [Piney Ridge] did
> not establish a right to judgment as a matter of law under [Ms. Ashby's]
> claim for discrimination, in that [Piney Ridge] failed to provide facts
> negating [Ms. Ashby's] claim that she has a chronic pain condition or facts
> showing that [Ms. Ashby] had not and could not provide evidence sufficient
> to support her claim of a chronic pain condition.

> Point Two: The trial court erred in entering summary judgment for [Piney
> Ridge] on [Ms. Ashby's] claims for disability discrimination under the
> Missouri Human Rights Act, RSMo § 213.111, because there is a genuine
> issue of material fact as to whether [Ms. Ashby] has a "disability" as that
> term is defined by RSMo § 213.010(5), in that [Piney Ridge's] wrongful
> perception that [Ms. Ashby] was illegally using or addicted to controlled
> substances constitutes a "disability" under the MHRA and [Piney Ridge]
> terminated [Ms. Ashby's] employment because of that wrongful perception.

Both points contend there was a genuine dispute as to the existence of Ms. Ashby's

alleged disability. Both points fail because Ms. Ashby overlooks that Piney Ridge is the

defending party, without the burden of persuasion, and can establish a right to judgment

as a matter of law by showing Ms. Ashby, "after an adequate period of discovery, has not

been able to produce, and will not be able to produce, evidence sufficient to allow the

trier of fact to find the existence of any one of [Ms. Ashby's] elements[.]" ***Lisle***, 667

S.W.3d at 103 (quoting ***ITT Com. Fin. Corp. v. Mid-America Marine Supply Corp.***, 854

S.W.2d 371, 381 (Mo. banc 1993), *superseded by rule on other grounds as recognized in*

8

*Green*, 606 S.W.3d at 119 n.7). Here, Ms. Ashby did not present any evidence establishing she was disabled under the MHRA.

Under the MHRA, it is unlawful for an employer to discharge an individual "because of" her disability. Section 213.055.1(1).[3] "[B]ecause of" requires the individual's disabled status to be "the motivating factor" for an adverse employment decision. Section 213.010(2). Therefore, to survive summary judgment on her disability discrimination claim, Ms. Ashby was required to establish a *prima facie* case showing that (1) she was disabled, (2) she was discharged, and (3) her disability was the motivating factor in her discharge. *See Folsom v. Mo. State Highway Patrol*, 580 S.W.3d 645, 650 (Mo. App. W.D. 2019) (stating the same elements but using the "contributing factor" standard).[4] A protected "[d]isability" is "a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job[.]" Section 213.010(5). To establish the first element of her discrimination claim, that she was disabled, Ms. Ashby had to show she had, was regarded as having, or had a record of having, an impairment that substantially limits a major life activity and that, with or without reasonable accommodation, the impairment does not interfere with

---

[3] All references to statutes are to RSMo, Cum.Supp. 2022, unless otherwise indicated.

[4] Piney Ridge's decision to terminate Ms. Ashby's employment and the surrounding facts occurred after the August 2017 amendments to the MHRA. The "motivating factor" standard therefore applies to Ms. Ashby's claims and not the "contributing factor" standard. *See Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 794-96 (Mo. App. W.D. 2018) (analyzing the impact of the 2017 amendments to the MHRA).

9

performing the essential functions of her job. *Folsom*, 580 S.W.3d at 650; *Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 320 (Mo. App. W.D. 2005). She failed to do so.

While Ms. Ashby alleged in her petition that her purported chronic back pain constitutes a disability, she failed to present any evidence sufficient to allow the trier of fact to find she has, or had a record of having, an impairment that substantially limits a major life activity. The uncontroverted evidence before the trial court showed she did not have, and could not produce evidence establishing, a physical or mental impairment that "substantially limits" her. Section 213.010(5). She presented no medical records, affidavits, testimony, or other competent evidence to establish she has or ever had "chronic back pain" or that her alleged back pain substantially limited a major life activity, including employment. Ms. Ashby similarly failed to present any evidence she was regarded as disabled, and she did not present a record of being disabled. She never requested a reasonable accommodation for a disability because, as she admitted, "she did not need an accommodation." Ms. Ashby also never informed anyone she had a medical condition requiring her to take opioids or any kind of disability prior to the random drug test. In fact, she never disclosed her opioid use before any of her drug tests.

The only reference Ms. Ashby makes to the record regarding her purported back pain is to the allegation in her petition asserting back pain, but an allegation alone does not defeat summary judgment. *Brehm v. Bacon Twp.*, 426 S.W.3d 1, 6 (Mo. banc 2014); Rule 74.04(c)(2) ("A denial may not rest upon the mere allegations or denials of the party's pleading."). Once Piney Ridge made a *prima facie* showing that it was entitled to summary judgment, Ms. Ashby had to present contrary evidence sufficient to show the

facts underlying her disability discrimination claim were still in dispute. *See **Hartwell***, 607 S.W.3d at 813 (stating, "when the movant has made a prima facie showing [of a right to summary judgment,] . . . 'the burden shift[s] to the non-movant to show that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed.'") (quoting ***Great S. Bank v. Blue Chalk Constr., LLC***, 497 S.W.3d 825, 829 (Mo. App. S.D. 2016)) (additional quotation marks omitted); Rule 74.04(c)(2) (requiring non-movants to "support each denial with specific references to the discovery, exhibits or affidavits" demonstrating there is a genuine issue for trial). Ms. Ashby argues, without referencing any authority, the trial court should have permitted her to produce the necessary evidence "at trial" rather than in response to Piney Ridge's summary judgment motion. This position is incorrect and ignores long-standing rules and law on summary judgment practice.[5] *See **Wehmeyer v. FAG Bearings Corp.***, 190 S.W.3d 643, 648 (Mo. App. S.D. 2006) (stating a non-movant may only avoid summary judgment by supporting denials with "affidavit[s], depositions, answers to interrogatories, or admissions on file") (internal quotations and citation omitted); *see also* Rule 74.04(c)(2).

---

[5] Except for a brief and partial reference in her first point relied on that was not supported by any argument under the point, Ms. Ashby does not assert she would have been able to produce sufficient evidence for the elements of her claims if she had additional time for discovery. She also did not "set forth [any] additional material facts that remain in dispute" in her response to Piney Ridge's motion for summary judgment, as permitted by Rule 74.04(c)(2), and did not request more time for discovery. In her reply brief, Ms. Ashby argues, based on her petition and without referencing any authority, that Rule 74.04 should be interpreted to require that the non-movant will not be able to produce the necessary evidence "at trial." This position is incorrect, without merit, and simply ignores Rule 74.04 and the teaching of our Supreme Court set forth above in our standard of review.

11

Given Ms. Ashby's failure to establish a *prima facie* case showing she was disabled under the MHRA, point three necessarily fails as well. Ms. Ashby argues in point three that the trial court erred in entering summary judgment on Ms. Ashby's disability discrimination claim because "the facts in the record show that [Piney Ridge] did not know about [Ms. Ashby's] disability before [Ms. Ashby] failed a drug test, but did know before [Piney Ridge] decided to terminate [Ms. Ashby's] employment." This argument focuses on the causation element for a claim under the MHRA, and, as such, it is predicated on the existence of an alleged disability, which could have then been "the motivating factor" for Piney Ridge's employment decision. *Bram*, 564 S.W.3d at 794 ("Post amendment, an employer violates the MHRA if the employee's protected status was the *motivating factor* in an adverse employment action."); Section 213.010(2). A disability could not have been the motivating factor, though, when there was no evidence establishing Ms. Ashby was disabled in the Rule 74.04(c) record.

Because Ms. Ashby did not produce any evidence that she was disabled, Piney Ridge established a right to judgment as a matter of law on Ms. Ashby's disability discrimination claim under the MHRA. Ms. Ashby's first, second, and third points are denied.

### Point Five – Piney Ridge's Drug-Free Workplace Policy is not Discriminatory as a Matter of Law

Ms. Ashby argues in point relied on five that Piney Ridge was not entitled to summary judgment because, "even if [Ms. Ashby] violated [Piney Ridge's] Drug-Free Workplace policy, said policy is discriminatory as a matter of law." She asserts employers cannot inquire into an employee's protected status, absent a request for an

12

accommodation, based on section 213.055.1(3). This statute states it is an unlawful employment practice to:

> make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification, or discrimination, because of . . . disability unless based upon a bona fide occupational qualification . . . or to classify or refer for employment any individual because of his or her . . . disability.

Section 213.055.1(3). Applying this language, Ms. Ashby maintains the Policy is inherently discriminatory because it requires employees to inform Piney Ridge of their need for medication without reservation, which may indicate an actual or perceived disability. This is not a fair reading of the Policy or statute.

Pursuant to the Policy, an employee must disclose to Piney Ridge their medications that contain alcohol "or any drug that poses a significant risk of substantial harm to the health and safety of . . . [employees] or others, or that renders the employee unable to perform the essential functions of the job, or that could in any way interfere with proper performance of their duties." Section 213.055.1(3) states employers may ask about a protected status when it is "based upon a bona fide occupational qualification[.]" A Level Four alcohol and substance abuse residential treatment facility for children and adolescents like Piney Ridge would understandably have a bona fide occupational reason to inquire into drug use – the safety of its employees, including Ms. Ashby, and its patients. *See Voss v. Hous. Auth. of Magnolia*, 917 F.3d 618, 625 (8th Cir. 2019) (finding no discrimination in an employer requesting a letter from an employee's healthcare provider regarding a hydrocodone prescription when it "was concerned as to whether [the employee's] medication interfered with his ability to safely perform job-related tasks."); *see also Kosmicki v. Burlington N. & Santa Fe Ry. Co.*, 545 F.3d 649,

13

651 (8th Cir. 2008) (affirming a grant of summary judgment after an employer showed an employee "worked while taking prescription drugs that affected his cognitive abilities . . . contrary to company policy and thus provid[ing] a legitimate reason for termination.").[6] Furthermore, drug use, prescription or otherwise, is not synonymous with being disabled. *See Voss*, 917 F.3d at 624-625 ("The fact [a supervisor] knew [an employee] was taking hydrocodone by itself is not enough to infer [the supervisor] regarded [the employee] as disabled."). Likewise, a limited drug use disclosure requirement is not equivalent to an obligation to report a disability.

We do not find the Policy to be discriminatory as a matter of law. The Policy requires only a narrow inquiry into an employee's drug use and satisfies the bona fide occupational qualification exception under section 213.055.1(3). Point five is denied.

Point Six – Piney Ridge Showed Ms. Ashby did not Produce, and Could not Produce, Evidence Sufficient to Demonstrate her Workplace Injury Report was the Motivating Factor in her Discharge

In point six, Ms. Ashby claims the trial court erred by granting summary judgment in favor of Piney Ridge on her workers' compensation retaliation claim. It states:

> The trial court erred in entering summary judgment for [Piney Ridge] on [Ms. Ashby's] claim for wrongful termination under the Workers Compensation Law, RSMo § 287.780, because there is a genuine issue of material fact regarding the reason for [Ms. Ashby's] termination of employment by [Piney Ridge], in that the testimony and evidence in the

---

[6] We rely on federal case law where appropriate because "the new [motivating factor] standard under the MHRA [and Workers' Compensation Law] is analogous to the one used in employment discrimination claims under federal law[.]" **Banks v. Kansas City Area Transp. Auth.**, 637 S.W.3d 431, 439 n.3 (Mo. App. W.D. 2021); *see also* **Medley**, 173 S.W.3d at 319 ("But in deciding a case under the MHRA, we are guided by both Missouri law and any applicable federal employment discrimination decisions.").

record shows that [Ms. Ashby] reported her work-related injury to [Piney Ridge] before, and not after, [Piney Ridge] decided to terminate [Ms. Ashby's] employment.

This point fails because no material fact remained in dispute as to Piney Ridge's reason for terminating Ms. Ashby's employment.

Ms. Ashby's petition attempted to allege a claim under section 287.780, the Missouri Workers' Compensation Law's retaliation statute, which provides:

> No employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter when the exercising of such rights is the motivating factor in the discharge or discrimination. Any employee who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer. For purposes of this section, "motivating factor" shall mean that the employee's exercise of his or her rights under this chapter actually played a role in the discharge or discrimination and had a determinative influence on the discharge or discrimination.

Section 287.780. To survive summary judgment on her retaliation claim, Ms. Ashby had to prove her decision to exercise her rights under the Workers' Compensation Law was "the motivating factor" in her discharge, i.e. that it "actually played a role in the discharge or discrimination **and had a determinative influence on the discharge or discrimination**."[7] *Id.* (emphasis added).

Here, the uncontroverted material facts showed that Piney Ridge knew on January 25, 2019, before her termination on January 28, 2019, that Ms. Ashby filed a report of a

---

[7] Ms. Ashby believes her decision to exercise a right under the Workers' Compensation Law need only be a "contributing factor" in Piney Ridge's decision to terminate her employment. However, just as with her MHRA claim, the facts pertaining to Ms. Ashby's Workers' Compensation Law claim occurred after the August 2017 amendments to the Workers' Compensation Law. The "contributing factor" standard does not apply to her Workers' Compensation Law claim. *See Poke v. Independence Sch. Dist.*, 647 S.W.3d 18, 20 (Mo. banc 2022) (interpreting "the motivating factor" and section 287.780 as amended).

15

work injury that allegedly occurred on January 21, 2019. Ms. Ashby reported her alleged injury three days after her initial, presumptive positive drug test for opioids. At that point, Piney Ridge had already initiated its testing protocols under the Policy to confirm a violation, and Ms. Ashby was already suspended and subject to potential termination. She was nonetheless able to see a workers' compensation physician as she requested, who did not prescribe Vicodin for her alleged injury. The results of the confirmation drug test came back on January 26, 2019. It confirmed the presence of hydrocodone and hydromorphone, and the levels of each drug in Ms. Ashby's system were higher than the cut off levels used in the initial test. Piney Ridge compared the confirmation lab test results to Ms. Ashby's 2017 prescription and concluded Ms. Ashby did not have a valid, current prescription for hydrocodone. It was only then that Piney Ridge terminated Ms. Ashby's employment on January 28, 2019, for violating the Policy.

Causation for a retaliation claim under the Workers' Compensation Law requires employees to demonstrate their decision to seek benefits had a "determinative influence" on the decision to terminate employment. Section 287.780. In this context, Ms. Ashby's claim depended on Piney Ridge's motivating factor being her workplace injury report and election of rights on January 25, 2019. Once Piney Ridge sought summary judgment, Ms. Ashby had to make a facial showing of retaliatory motivation and hence causation. *See Wey v. Dyno Nobel, Inc.*, 81 S.W.3d 208, 211 (Mo. App. S.D. 2002) (reversing a grant of summary judgment where "the record on appeal contains competent evidence of two possible, but contradictory, reasons" for a discharge). "[S]uch causation does not exist if the basis for the discharge is valid and nonpretextual[,]" and Piney Ridge sufficiently substantiated a valid and nonpretextual reason for discharging Ashby –

16

violating the Policy. *St. Lawrence v. Trans World Airlines, Inc.*, 8 S.W.3d 143, 149 (Mo. App. E.D. 1999).

Based on the uncontroverted material facts, Ms. Ashby, while suspended for a presumptive positive drug test and shortly before she was terminated based on a second confirming analysis, filed an after-the-fact report of a work injury that Piney Ridge processed normally. This happenstance does not create a genuine issue of material fact as to the motivation for Ms. Ashby's termination. Ms. Ashby did not produce evidence sufficient to allow the trier of fact to find any other motivation "actually played a role in" and "had a determinative influence on" her discharge per section 287.780. *See Hickman v. May Dept. Stores Co.*, 887 S.W.2d 628, 631 (Mo. App. E.D. 1994) ("We hold that absent other substantial evidence of causality, the temporal proximity of these events [(i.e. a span of nine months between filing a workers' compensation claim and discharge and seven months between the filing and a negative job appraisal)] is an insufficient basis on which to submit a retaliatory discharge clam [under section 287.780] to a jury."); *see also Scroggins v. Univ. of Minnesota*, 221 F.3d 1042, 1045 (8th Cir. 2000) (stating, in a Title VII case, "even if [a supervisor] knew of the complaint before the termination, in the circumstances of this case, the mere coincidence of timing does not raise an inference of causation. . . . Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.") (internal quotations and citations omitted). Ms. Ashby's temporal proximity argument fails "because 'the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.'" *Scroggins*, 221 F.3d at 1045 (quoting *Kiel v. Select Artificials, Inc.*, 169

17

F.3d 1131, 1136 (8th Cir. 1999)). Her contention that causation was still at issue was also, at best, speculative and warranted summary judgment. *See **ITT Com. Fin. Corp.**,* 854 S.W.2d at 382 ("Where the 'genuine issues' raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper.").

Ms. Ashby did not produce evidence sufficient to allow the trier of fact to find her exercise of her right to report a workplace injury was the motivating factor in her discharge. As a result, Piney Ridge established a right to judgment as a matter of law on Ms. Ashby's retaliation claim. Point six is denied.

<u>Point Four – Ms. Ashby Failed to Establish a *Prima Facie* Case Under the MHRA and the Elements of Her Retaliation Claim Under the Missouri Workers' Compensation Law</u>

Ms. Ashby claims in point four that the trial court erred in granting summary judgment in Piney Ridge's favor on her claims under the MHRA and the Workers' Compensation Law because "there is a genuine issue of material fact as to whether [Piney Ridge] terminated [Ms. Ashby's] employment for a legitimate, nondiscriminatory reason, in that [Piney Ridge] failed to produce evidence showing that [Ms. Ashby] violated [Piney Ridge's] Drug-Free Workplace policy."[8] As best we can understand Ms. Ashby's multifarious point, her argument assumes she established both a *prima facie* case for discrimination under the MHRA and the elements of her claim for retaliation under

---

[8] Point four fails to comply with the mandatory briefing requirements of Rule 84.04(d)(1) in that it is multifarious. It challenges the trial court's grant of summary judgment on claims under two different statutes in one point. ***Fowler v. Missouri Sheriffs' Retirement System***, 623 S.W.3d 578, 582-83 (Mo. banc 2021) ("[P]oint relied on is multifarious in violation of Rule 84.04 because it groups together multiple, independent claims.") We nonetheless review point four because our analysis on points one through three and point six are determinative of this point.

18

Missouri's Workers' Compensation Law. As we previously determined herein, she failed to do both.

It is only after an employee establishes a *prima facie* case for discrimination that the employer must rebut the accusation with evidence of a legitimate, nondiscriminatory reason for its conduct. ***Eivins v. Mo. Dep't of Corr.***, 636 S.W.3d 155, 167 (Mo. App. W.D. 2021). Ms. Ashby's discrimination claim collapsed at this step because, as we addressed in our discussion of points one, two, and three, Ms. Ashby presented no *prima facie* evidence establishing she was disabled under the MHRA.

Similarly, Ms. Ashby had to prove her decision to exercise her rights under the Workers' Compensation Law was "the motivating factor" in her discharge, i.e. that it "actually played a role in the discharge or discrimination and had a determinative influence on the discharge or discrimination." Section 287.780. "If the evidence demonstrates that the employer had just cause for terminating the employment, other than for the employee's exercise of her rights under the [Workers' Compensation Law]," the employer is entitled to summary judgment on the employee's retaliation claim. ***St. Lawrence***, 8 S.W.3d at 150.

Here, Ms. Ashby admitted as true the facts underlying Piney Ridge's legitimate, nondiscriminatory reason for ending her employment – violating the Policy by failing a random drug test and not having a current prescription to excuse the test result – and presented no evidence of a retaliatory motive.

Ms. Ashby believes the uncontroverted facts do not show she violated the Policy because she provided a prescription and Piney Ridge never defined "current" or "valid" prescription. We note her prescription was prescribed to treat pain for a limited time after

a tubal ligation surgery and had an "end" date set nearly two years before her drug test. However, we need not interpret the phrase "current prescription" because "[i]t is generally for an employer to interpret its own policies[.]" ***Richey v. City of Indep.***, 540 F.3d 779, 786 (8th Cir. 2008). For purposes of reviewing a grant of summary judgment, the issue is whether Piney Ridge sincerely found Ms. Ashby in violation of its Policy. ***Id.*** at 784 ("If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity."). Here, Piney Ridge found Ms. Ashby violated the Policy, hence she engaged in misconduct, for which she was terminated. Complaints about the scope of "current" are unavailing without evidence of pretext or material facts in dispute as to Piney Ridge's sincerity, of which there are neither. Point four is denied.

## Conclusion

The trial court did not err in granting summary judgment in Piney Ridge's favor. Ms. Ashby failed to establish she was disabled under the MHRA and consequentially could not prove her alleged disability was the motivating factor in Piney Ridge's adverse employment decision. She did not produce, and could not produce, evidence sufficient to demonstrate her workplace injury report was the motivating factor in her discharge under the Workers' Compensation Law, and Piney Ridge presented evidence of a Policy violation as a nonpretextual reason for terminating Ms. Ashby. We additionally do not find the Policy is discriminatory as a matter of law. The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS